**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 22A05-1306-CR-317 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable J. Terrence Cody, Judge
Cause No. 22C01-1109-FA-2011

**February 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Steven Smith appeals his conviction for attempted dealing in cocaine, as a Class A felony, and his adjudication as an habitual offender following a jury trial. Smith raises five issues for our review, which we restate as follows:

1. Whether the trial court committed fundamental error when it allowed testifying police officers to state that they knew Smith.

2. Whether the trial court abused its discretion when it admitted into evidence a photograph of Smith.

3. Whether the trial court abused its discretion when it instructed the jury.

4. Whether Smith has preserved for appellate review his assertion that the trial court erred when it permitted the State to amend the habitual offender allegation prior to trial.

5. Whether the trial court erred when it merged rather than vacated a lesser included offense into Smith's conviction for attempted dealing in cocaine.

We affirm but remand with instructions.

**FACTS AND PROCEDURAL HISTORY**

In September of 2011, Rhonda Baker agreed to work as a confidential informant for the New Albany Police Department. Baker, a recovering crack cocaine addict, informed Officer Kris Ferrell that she could purchase crack cocaine from Smith. Officer Ferrell asked Baker how a normal transaction with Smith took place, and Baker informed him that Smith would meet her at her residence, she would buy the contraband, and the two would usually smoke it together insider her house.

Officer Ferrell and Officer Kelly Brown set up a controlled buy with Baker at her residence. The officers had Baker call Smith in their presence and set up the meeting. That call was recorded. Baker informed Smith that she "got the hundred" and Smith responded, "Don't worry. Me and you will be there." Transcript at 143-44. Baker explained that she did not have more money because she had to buy "baby milk" and that Smith and his partner would have to split her $100 "fifty and fifty." Id. Following the recorded call, Officer Ferrell gave Baker a photocopied $100 bill and an audio recorder. Baker then went to her house and waited for Smith and his partner.

Shortly thereafter, Smith arrived driving a blue Oldsmobile. Alan Cooper exited the passenger's side of the vehicle and approached Baker. Baker gave Cooper the $100, and Cooper told Baker that "Steve had the dope." Id. at 254. Baker approached Smith, and Smith "wanted to go into the house" because he "was the type of dealer that . . . liked to stay at your house and smoke with you. Smoke for free." Id. But the officers did not want Baker to enter her residence with Smith and Cooper, and Baker told Smith and Cooper that her dad was nearby and they needed to leave. Smith and Cooper left with both the money and the crack cocaine.

The officers immediately initiated a traffic stop of Smith's vehicle. The officers instructed both Smith and Cooper to show their hands, and Cooper complied. Smith, however, only "held his right hand up" and, with his left hand, he made "movements towards the side" of the driver's door. Id. at 167. The officers removed Smith from the vehicle and searched the vehicle. "[I]n the area where Mr. Smith [had] his [left] ha[n]d placed during the traffic stop . . . an unpackaged rock of crack cocaine was

3

located . . . tucked under the seat . . . ." Id. at 175. Officers also located a "Cricket cellular phone . . . on Mr. Smith's person. The cellular phone . . . showed incoming and outgoing calls to the informant's cellular phone." Id. at 172. The officers recognized the Cricket cellular phone as typical for drug dealers. The officers located the $100 bill they had given to Baker on Cooper's person, along with additional crack cocaine. The officers then arrested Smith and Cooper, and, in the course of being arrested, Smith told Officer Ferrell that Cooper "has my fifty dollars." Id.

On September 6, 2011, the State charged Smith with dealing in cocaine, as a Class A felony, and possession of cocaine, as a Class D felony. The State later amended the charge of dealing in cocaine to attempted dealing in cocaine and later amended the charge of possession of cocaine from a Class D felony to a Class B felony. On September 16, the State amended the information to include an allegation that Smith was an habitual offender. Underlying the habitual offender allegation, the State asserted that Smith had a September 1, 2011, conviction for dealing in cocaine, as a Class B felony, and a January 31, 1994, conviction in Kentucky for felony "Complicity in Trafficking in a Schedule II Controlled Substance/Narcotics/Cocaine." Appellant's App. at 36.

On January 24, 2013, the State filed a motion to amend the habitual offender allegation. In particular, the State's motion to amend sought to include a January 11, 2007, conviction for dealing in cocaine, as a Class B felony, and to correct the title of the 1994 Kentucky offense to "Trafficking in a Controlled Substance—Cocaine." Id. at 117. The trial court held a hearing on the State's motion to amend, and Smith's counsel did not object to the State's motion with respect to the habitual offender allegation and did

4

not ask for a continuance. Rather, Smith's counsel acknowledged that "Smith had been well aware that [the newly included prior felony] existed." Transcript at 40. The court granted the State's motion to amend on January 29.

Smith's jury trial began on February 4. At the beginning of trial, the court instructed the jury that "[t]he defendant is not required to present any evidence to prove his innocence or to prove or explain anything. You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth." Appellant's App. at 148.

The State called Officer Ferrell, Officer Brown, and Baker as witnesses, and each testified about the controlled drug buy and that each had observed Smith as a participant in that buy. In identifying Smith, the State admitted into evidence audio recordings of Smith's statements to Baker during the controlled drug buy. Baker, Officer Ferrell, and Officer Brown had each recognized Smith's voice. In establishing the officers' identification of Smith in the audio recordings in light of Smith's argument that the male voice in the recordings was Cooper, Officer Ferrell testified that he "kn[e]w" Smith and that he had talked to Smith "more than one time." Id. at 139. And Officer Brown testified that she also "knew" Smith "[f]rom professional" encounters with him. Id. at 405. Smith's counsel did not object to these statements from Officer Ferrell and Officer Brown. However, over the objection of Smith's counsel, the trial court admitted a frontal photograph of Smith's neck and face.

At the close of the trial, Smith's counsel tendered the following final jury instruction:

If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the accused, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the accused's innocence, and reject that which points to his guilt.

Appellant's App. at 160. Over the objection of Smith's counsel, the trial court rejected

Smith's tendered instruction and, instead, instructed the jury in relevant part as follows:

## FINAL INSTRUCTION NO. 7

Under the law of Indiana, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the Defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

## FINAL INSTRUCTION NO. 8

The burden is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crime(s) charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the Defendant's guilt. But it does not mean that a Defendant's guilt must be proved beyond all possible doubt.

A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from the lack of evidence. Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt, after you have weighed and considered all the evidence.

A Defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the Defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt.

The State must prove each element of the crime(s) by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance.

If you find that there is reasonable doubt that the Defendant is guilty of the crime(s), you must give the Defendant the benefit of that doubt and find the Defendant not guilty of the crime under consideration.

Id. at 181-82.

The jury found Smith guilty as charged, and the trial court entered its judgment of conviction and sentencing order accordingly. In its judgment of conviction, the court stated that it ordered judgment on the jury's verdict that Smith attempted to deal in cocaine as well as the jury's verdict that Smith possessed cocaine, but the court then said that Smith's "conviction of Count 2, Possession of Cocaine . . . is merged into his conviction and sentence" for attempted dealing. Id. at 227. This appeal ensued.

**DISCUSSION AND DECISION**

**Issue One: Fundamental Error**

Smith first asserts that the trial court committed fundamental error when it permitted Officer Ferrell and Officer Brown to testify that they "knew" Smith "[f]rom professional" encounters with him. Id. at 139, 405. As our Supreme Court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted). "Where evidence of guilt is overwhelming any error in the admission of evidence is not fundamental." Halliburton v. State, ___ N.E.2d ___, 2013 WL 6698795, at *10 n.7 (Ind. Dec. 19, 2013).

7

Here, the evidence supporting the jury's verdict that Smith attempted to deal in cocaine was overwhelming. Baker testified that she recognized Smith's voice in the incriminating audio recordings. Officer Ferrell testified that the officers seized a Cricket phone from Smith immediately following the attempted buy and that the phone showed Smith's phone calls with Baker to set up the buy. Officer Ferrell, Officer Brown, and Baker each testified that they had observed Smith participate in the attempted drug buy shortly after it had been arranged over the phone.

Officer Ferrell also testified that, when the officers initiated their traffic stop of Smith's vehicle immediately following the attempted buy, he observed Smith refuse to show his left hand and, instead, move his left hand near the driver's side door. Upon removing Smith from the vehicle, the officers located an unpackaged rock of crack cocaine in that same location. On Cooper, Smith's confederate, the officers found the $100 bill they had given to Baker and more crack cocaine. And, upon arresting Smith, Officer Ferrell testified that Smith demanded his split of the $100 from Cooper.

In light of the overwhelming evidence against Smith, the trial court did not commit fundamental error when it permitted the officers to state that they recognized Smith.

**Issue Two: Admission of Photograph**

Smith next asserts that the trial court abused its discretion when it admitted a photograph into evidence. Our standard of review of a trial court's admission of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the

logic and effect of the facts and circumstances before the court. Id. It is well-established that "errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Sibbing v. Cave, 922 N.E.2d 594, 598 (Ind. 2010) (quotations omitted). To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the jury. Id. "The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." Hoglund v. State, 962 N.E.2d 1230, 1238 (Ind. 2012).

Here, Smith asserts that the photograph admitted by the State over his objection was the equivalent of a "mug shot." Appellant's Br. at 19. Our Supreme Court has held that "mug shots are prejudicial when they show the frontal and profile views with information regarding prior arrests. Such photographs are inadmissible when they imply that the defendant has a criminal record." Menifee v. State, 512 N.E.2d 142, 144 (Ind. 1987) (citation omitted). But the photograph here is only a frontal photograph of Smith. There is no profile view and there is no information in the photograph regarding prior arrests or implying that Smith has a criminal record. See State's Ex. 2. As such, the photograph is not an inadmissible mug shot.

In any event, as explained in Issue One, the State's evidence against Smith was overwhelming, and there is no substantial likelihood that this photograph contributed to

9

Smith's conviction. Thus, any error in the admission of this photograph was harmless. See Hoglund, 962 N.E.2d at 1238. Smith cannot prevail on this issue.[1]

### Issue Three: Jury Instruction

Smith also argues that the trial court abused its discretion when it rejected his tendered jury instruction on the presumption of innocence. The task of instructing the jury is left to the sound discretion of the trial court. As we have explained:

> The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury.

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008) (citations and quotations omitted). Further:

> When reviewing the propriety of the trial court's decision to refuse a tendered jury instruction, we consider the following factors: (1) whether the instruction was supported by evidence in the record; (2) whether the instruction correctly states the law; and (3) whether other instructions adequately cover the substance of the denied instruction. A defendant is only entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights.

Washington v. State, 840 N.E.2d 873, 888 (Ind. Ct. App. 2006) (citations and quotations omitted), trans. denied.

In considering whether an error in the jury instructions requires reversal, "we presume the error affected the verdict, and we will reverse the defendant's conviction

---

[1] Just as we reject Smith's separate arguments under Issue One and Issue Two, we likewise reject his argument that the cumulative effect of these purported errors requires reversal.

unless the verdict would have been the same under a proper instruction." Kane v. State, 976 N.E.2d 1228, 1232 (Ind. 2012) (quotation omitted). That is, an instructional error is harmless when the conviction is "clearly sustained by the evidence and the jury could not properly have found otherwise." Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001).

We addressed an argument similar to Smith's in Matheny v. State, 983 N.E.2d 672, 681 (Ind. Ct. App. 2013), aff'd on reh'g, 987 N.E.2d 1169, trans. denied. In Matheny, we held that the alleged error was harmless, stating:

> The U.S. Supreme Court has said that "the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution." Kentucky v. Whorton, 441 U.S. 786, 789, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979). "[S]uch a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." Id.; see also Vaughan v. State, 446 N.E.2d 1, 3 (Ind. Ct. App. 1983) (noting that Indiana followed Whorton); but cf. Lee, 964 N.E.2d at 864-65 (concluding that trial court's refusal to give instruction on presumption of innocence was reversible error where State failed to respond to defendant's argument that error was not harmless). Generally, "[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Smith v. State, 755 N.E.2d 1150, 1152 (Ind. Ct. App. 2001), trans. denied.
>
> Here, the jury was instructed that Matheny was presumed innocent and was not required to prove his innocence or to prove or explain anything. The jury was also informed that the State bore the burden of proving that the defendant is guilty beyond a reasonable doubt. The jury was further instructed that where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence.
>
> During voir dire, defense counsel stated, "We presume Mr. Matheny's innocent . . . if you presume they're [sic] guilty instead of innocent you might convict someone falsely." During final argument,

11

defense counsel told the jury, "He's presumed innocent. You must fit every reasonable hypothesis with his innocence and assume he's innocent and start from that and not the other way around."

Finally, the evidence does not support a reasonable theory of innocence. . . .

Id. (citations to the record omitted).

Here, as in Matheny, the jury was instructed that Smith was presumed innocent and was not required to prove his innocence or explain anything. Appellant's App. at 181. The jury was also informed that the State bore the burden of proving that Smith was guilty beyond a reasonable doubt. Id. at 181-82. And the jury was instructed that the State's burden was "a strict and heavy burden," that the State's evidence must "firmly convince[] each of you" and "be so convincing that you can rely and act upon it in this matter of the highest importance," that Smith "must not be convicted on suspicion or speculation," and that, "[i]f you find there is reasonable doubt . . . , you must give the Defendant the benefit of that doubt . . . ." Id. at 182. Further, one of the court's preliminary instructions explicitly stated that the jury "should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth." Id. at 148.

Moreover, the evidence does not support a reasonable theory of innocence. As explained in Issue One, the evidence against Smith was overwhelming, and, Smith's assertions notwithstanding, we will not reweigh the evidence on appeal. Stated another way, even if the jury had received Smith's tendered instruction, its verdict would have been the same. See Kane, 976 N.E.2d at 1232. Accordingly, any error in the trial court's

instructions to the jury was harmless and Smith cannot demonstrate reversible error on appeal.  See Dill, 741 N.E.2d at 1233.

### Issue Four:  Amendment to the Habitual Offender Allegation

Fourth, Smith contends that the trial court abused its discretion when it permitted the State to amend its habitual offender allegation less than one week before trial.  But Smith did not object to the State's proffered amendment and he did not request a continuance in light of the State's request to amend the information.  See Wilson v. State, 931 N.E.2d 914, 917-18 (Ind. Ct. App. 2010), trans. denied; see also Ind. Code § 35-34-1-5(e).  And Smith does not argue that fundamental error applies to this issue on appeal.  See Ind. Appellate Rule 46(A)(8)(a).  As such, Smith has not preserved this issue for our review.  See Wilson, 931 N.E.2d at 917-18.

### Issue Five:  Merger of the Lesser Included Offense

Finally, Smith asserts that the trial court violated his double jeopardy rights when it merged his conviction for possession of cocaine, as a Class B felony, with his conviction for attempted dealing in cocaine, as a Class A felony.  According to Smith, the trial court was obliged to vacate his Class B felony conviction.  Smith is incorrect, but we nonetheless remand with instructions that the trial court correct its records.

In Carter v. State, 750 N.E.2d 778 (Ind. 2001), our Supreme Court refused to vacate a lesser included offense on which the jury had found the defendant guilty, but the trial court had not entered a judgment of conviction.  Specifically, our Supreme Court held that it was "unnecessary" to vacate the lesser included offense because "a jury verdict on which the court did not enter judgment for one reason or another (merger,

13

double jeopardy, etc.) is unproblematic . . . in the double jeopardy context." Id. at 778, 781. Moreover, the court noted that "more harm than good may result if a trial court 'vacates' a jury verdict not reduced to judgment," especially if the greater offense is reversed "for reasons specific to the incremental elements between the greater and a lesser included offense." Id. at 781 n.9.

Here, the jury found Smith guilty of attempted dealing in cocaine, as a Class A felony, and possession of cocaine, as a Class B felony. The State does not contest Smith's assertion that the Class B felony is a lesser included offense to Smith's Class A felony and that the trial court could not enter a judgment of conviction on both counts. The trial court also agreed: in its judgment of conviction, the court stated that Smith's Class B felony "is merged into his conviction and sentence" for the Class A felony. Appellant's App. at 227. This language is repeated both in the chronological case summary ("CCS") and the abstract of judgment. Id. at 16, 229.

However, the CCS and judgment of conviction also state that the trial court entered a judgment of conviction on the Class B felony verdict. Id. at 16, 226. And the abstract of judgment states that only Smith's "sentence" for the Class B felony conviction, rather than the conviction itself, was "merge[d]" with the Class A felony conviction. Id. at 229. While we do not doubt that the trial court intended to merge the Class B felony verdict into the Class A felony conviction to avoid double jeopardy concerns, this language is concerning enough to justify remanding for clarification. On remand, the trial court shall correct these records to reflect that it has entered a judgment of conviction only on Smith's Class A felony conviction.

14

**Conclusion**

In sum, the State presented overwhelming evidence to show that Smith had committed attempting dealing in cocaine, as a Class A felony. As such, Smith's arguments that the trial court either committed fundamental error or abused its discretion in the admission of evidence must fail. Likewise, in light of the overwhelming evidence and the totality of the trial court's jury instructions, Smith cannot demonstrate reversible error on his argument that the trial court abused its discretion in the instruction of the jury. We also conclude that Smith has not preserved for appellate review his claim of error in the State's amendment to the information. Finally, we reject Smith's assertion that the trial court was required to vacate the jury's verdict that he committed possession of cocaine, as a Class B felony, but we nonetheless remand with instructions that the trial court clarify in its records that it did not enter a judgment of conviction on that verdict.

Affirmed and remanded with instructions.

BAKER, J., and CRONE, J., concur.