ATTORNEYS FOR APPELLANT
William H. Kelley
Darla S. Brown
Kelley, Belcher & Brown
Bloomington, Indiana

ATTORNEY FOR APPELLEE
James A. Mellowitz
Robert W. York & Associates
Indianapolis, Indiana

ATTORNEYS FOR
AMICUS CURIAE
INS. INST. OF IND.
Karl L. Mulvaney
Barry C. Cope
Briana L. Kovac
Bingham McHale LLP
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court



FILED
Mar 04 2010, 2:58 pm

CLERK
of the supreme court,
court of appeals and
tax court

No.  49S02-0906-CV-00275

ERIC P. SIBBING,                                    *Appellant (Defendant below),*

v.

AMANDA N. CAVE,  INDIVIDUALLY, AND AS THE MOTHER AND GUARDIAN
        OF MERCY M. CAVE, A MINOR CHILD,              *Appellee (Plaintiff below).*

_____

Appeal from the Marion Superior Court, No. 49D10-0608-CT-33387
The Honorable David J. Dreyer, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0802-CV-165

_____

**March 4, 2010**

**Dickson, Justice.**


Following a plaintiff's verdict in this automobile rear-end collision personal injury case, the defendant appealed, claiming trial court error in (a) permitting the plaintiff to testify about what she was told by her treating physician and her own beliefs about the cause of her pain, and (b) excluding medical necessity evidence from the defendant's expert witness.  The Court of Appeals affirmed.  Sibbing v. Cave, 901 N.E.2d 1155 (Ind. Ct. App. 2009).  We granted transfer and affirm, holding that some of the challenged medical testimony of the plaintiff was improperly admitted but that the resulting error does not require reversal, and that the defendant's evi-

dence regarding medical necessity was properly excluded.

A brief summary of the factual and procedural background provides context for our discussion of the issues. This case arises from an Indianapolis motor vehicle collision on October 27, 2005, in which the defendant drove his automobile into the rear of the vehicle occupied by the plaintiff and her eleven-year-old daughter. The defendant was driving "around 45, 50 miles a[n] hour possibly a little over," Tr. at 219, preoccupied with adjusting his car radio, did not see the slowed traffic in front of him, and failed to apply his brakes or reduce his speed before the forceful impact. The resulting vehicular damage was substantial. The plaintiff experienced a sudden onset headache but was able to drive home after the collision. About three hours later, she drove herself to the St. Francis Hospital emergency room where she was examined, treated, and released. About two weeks later, beginning November 14, 2005, she sought and received medical care and treatment from Muhammad Saquib, M.D., and his associates at a medical clinic, Priority 1 Medical, consisting of fourteen or fifteen visits over the course of one month. Following procedural difficulties in arranging for treatment with Pain Management Services at Community Hospital East, she sought further care for relief of her continuing pain and disability at Castleton Chiropractic, where she received treatment, primarily from Ronald Sheppard, D.C., consisting of about forty visits from February through June, 2006.

The defendant did not contest liability at trial.[1] The plaintiff's evidence included various medical records and bills from St. Francis Hospital, Priority 1 Medical, and Castleton Chiropractic, and testimony from herself, her mother, her daughter, the defendant, the investigating police officer, and Dr. Sheppard. The defendant's witnesses included J. Paul Kern, M.D., by video deposition,[2] and the defendant's girlfriend, who arrived at the scene of the collision while the plain-

---

[1] The plaintiff contends, and the defendant does not dispute, that the parties filed a "Joint Proposed Preliminary Issue Instruction" to advise the jury. The stipulated instruction included the following: "Defendant admits that he was solely at fault for causing the collision. However, Defendant denies that all of the claimed injuries and damages were caused by the crash, and disputes the nature and extent of the claimed injuries and damages." Appellee's App'x at 35–36, and noted in Appellee's Br. at 5. Neither party has supplied in the record the actual preliminary or final instructions in the case.

[2] Before the trial began, the court granted the plaintiff's motion to strike from Dr. Kern's deposition certain passages relating to whether some of the plaintiff's medical care (a nerve conduction study by Dr. Saquib and all chiropractic care received by the plaintiff) was necessary. Appellant's App'x at 25–26.

2

tiff was still present. The trial court entered judgment upon the jury's verdict awarding the plaintiff $71,675 and her daughter $325.

## 1. Admission of Plaintiff's Testimony

The defendant first challenges the trial court's decision in allowing the plaintiff, over defendant's objection, "to recite hearsay testimony at trial about what Dr. Saquib told her about her injuries." Appellant's Br. at 16. The defendant argues that "Dr. Saquib, Cave's internist, was not the one receiving medical diagnosis or treatment" and that the plaintiff's "testimony as to what Dr. Saquib allegedly told her about the results of diagnostic tests and the cause of her pain does not qualify as an exception to the hearsay rule under Evid. R. 803(4) since the statements at issue were made by Dr. Saquib to Cave and not by Cave to Dr. Saquib for purposes of receiving a diagnosis or treatment." *Id.* at 19.

Indiana Evidence Rule 803(4) operates as an exception to the general rule that hearsay is inadmissible evidence at trial. The rule states:

> **Statements for Purpose of Medical Diagnosis or Treatment**. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The plaintiff points to <u>Coffey v. Coffey</u>, 649 N.E.2d 1074 (Ind. Ct. App. 1995), *trans. not sought*, as authority for allowing statements made by a health care provider to a patient to be admitted under the 803(4) hearsay exception. <u>Coffey</u> involved the distribution of marital assets in a dissolution proceeding. To show available assets, the husband attempted to admit a letter from his doctor describing his medical condition and diagnosis, arguably a relevant factor when determining property division. *Id*. at 1078. The trial court excluded the letter, and in his appeal, the husband argued the letter should have been admitted under 803(4). *Id.* The Court of Appeals agreed, reversed, and remanded, apparently concluding that the letter's information regarding physical diagnosis, treatment agenda, and resulting inability to work fell within rule 803(4)'s lan-

---

The trial court's order resulted in the exclusion of an aggregate of approximately 15 of the deposition's 135 pages.

guage, which does not explicitly state *whose* statements fall within the exception.

We disagree with and disapprove of this holding in Coffey. The rationale for the 803(4) hearsay exception is that a declarant has a personal interest in obtaining a medical diagnosis and treatment, and this interest motivates the patient to provide truthful information. *See* McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996). Stated another way, a patient's personal interest in receiving medical treatment supplies significant indicia of reliability that the patient's statements are true, thus reducing the need for exclusion of hearsay evidence not subject to cross-examination. Declarations made by a physician or other health care provider to a patient do not share this enhanced indicia of reliability. Furthermore, because of the substantial likelihood that a typical patient may fail to fully or accurately comprehend or understand the physician's report, to admit into evidence a patient's personal perception of the physician's statement would not only foster the possibility of misreporting but also eliminate the opportunity for clarifying cross-examination of the physician. While Rule 803(4) does not expressly identify which declarants' medical statements are intended to be treated as a hearsay rule exception, we hold that the Rule is intended and should apply only to statements made by persons who are seeking medical diagnosis or treatment.

For this reason, the plaintiff's testimony reporting Dr. Saquib's statements about the results of diagnostic tests and the cause of her pain does not qualify as an exception to the hearsay rule under Rule 803(4). On the other hand, "errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." McClain, 675 N.E.2d at 331. Likewise, reversible error cannot be predicated upon the erroneous admission of evidence that is merely cumulative of other evidence that has already been properly admitted. Davis v. Garrett, 887 N.E.2d 942, 947 (Ind. Ct. App. 2008), *trans. denied*. To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the jury. McClain, 675 N.E.2d at 331.

Anticipating the application of the harmless error doctrine, the defendant argues that the objectionable evidence is not merely cumulative of other evidence and that "[i]t cannot be said that the addition of the 'medical testimony' from the absent Dr. Saquib could not have affected

4

the jury's decision and hence the outcome of the trial."  Appellant's Br. at 21.

The defendant principally challenges the plaintiff's testimony reporting Dr. Saquib's statements to her regarding the probable degree and duration of discomfort, the frequency that similar traffic accidents result in injuries not immediately evident, that "the curve of my spine was off based on like whiplash," that her MRI "showed a bulging disc between L5 and S2 spine bones," and that the location of the bulging disc was "in the same spot" that the plaintiff initially identified in the emergency room.  Appellant's Br. at 7–9.  The defendant identifies the plaintiff's statement, "I knew the pain in my lower back was because of the bulging disc," *id.* at 10, and argues that it was improperly admitted over his objection for lack of foundation, showing no medical expertise, *id.* at 19–20.

We find that substantially all of this evidence was also presented to the jury through other exhibits, including Plaintiff's Exhibit 11, fifty-five pages of the plaintiff's medical treatment records from Priority 1 Medical, where she was under the care of Dr. Saquib, and through the testimony of the plaintiff's medical witness, Dr. Sheppard.  The Priority 1 Medical records, including the plaintiff's MRI test results, were admitted without objection.  Among the other evidence admitted, for example, was the written report of radiologist Ronald I. Landau, M.D., expressing his MRI impression of "Annular disc bulging at L5-S1."  Plaintiff's Exhibit 12, Appellee's App'x at 309–10.  In addition, Dr. Sheppard testified without objection that the MRI showed that the plaintiff was suffering from a bulging disc at L5-S1, that this was consistent with her complaints of back pain, and that her injuries were the result of trauma.

Considering the nature and probable impact of the plaintiff's lay testimony expressing her recollection of medical information received, the substantial medical confirmation and elaboration provided through the testimony of Dr. Sheppard, and the rather extensive medical records admitted without objection, we conclude that the erroneous admission of the plaintiff's testimony regarding what Dr. Saquib told her about the results of diagnostic testing is cumulative, did not

5

affect the defendant's substantial rights, and thus does not require reversal.[3]

The defendant also contends that the trial court erred in permitting the plaintiff to give her own opinion as to the cause of her pain. In this regard, the defendant identifies a single statement as being improperly admitted. When asked on direct examination what she believed was causing her pain, the plaintiff replied: "Well I knew that the pain in my lower back was because of the bulging disc, the rest of it was just terrible muscle pain I felt like I had been rolled down stairs repeatedly." Appellant's Br. at 10, *quoting* Tr. at 90, Appellant's App'x at 20. The defendant's sole trial objection claimed "no proper foundation." *Id.* The trial court overruled the objection stating, "I think it's within the range of what a patient can or the plaintiff can describe." *Id.* On appeal, the defendant alternatively contends that the plaintiff should not have been permitted to repeat the opinion of Dr. Saquib "under the guise of Rule 803(4)" or that, if the plaintiff had arrived at these opinions on her own, she was not qualified to give medical opinion testimony under Indiana Evidence Rule 702 absent a proper foundation. Only the claim of improper foundation was presented at trial and is thus eligible for appellate consideration.

In giving the challenged testimony, the plaintiff was not testifying as an expert. The question eliciting the plaintiff's response did not ask for her medical expertise regarding the causation of her pain; it merely asked, "What did you believe was causing your pain?" Tr. at 90, Appellant's App'x at 20. Her resulting answer, merely stating her own personal belief about the source of her pain, was permissible as testimony by a lay witness pursuant to Indiana Evidence Rule 701. The trial court did not err in overruling the defendant's objection.

**2. Exclusion of Defendant's Evidence Challenging Plaintiff's Medical Treatment**

The defendant contends that the trial court erred in striking portions of the videotape deposition of the defendant's medical expert, Paul Kern, M.D. Urging that he should have been permitted to present this evidence challenging the medical necessity of Dr. Saquib's nerve conduction studies at Priority 1 Medical and "passive care" treatment provided more than four weeks

---

[3] Because we decline to reverse on the Evidence Rule 803(4) issue, we do not address the plaintiff's contention that admission of her challenged testimony does not require application of the Rule 803(4) exception to the hearsay rule because her testimony was not hearsay.

after the collision, first from Priority 1 Medical and later from Dr. Sheppard at Castleton Chiropractic, the defendant argues that he was thereby precluded from rebutting the plaintiff's claim. The defendant emphasizes that a party seeking to recover damages for medical expenses must prove that the expenses were both reasonable and necessary, *citing* Cook v. Whitsell-Sherman, 796 N.E.2d 271, 277 (Ind. 2003), and Burge v. Teter, 808 N.E.2d 124, 132 (Ind. Ct. App. 2004), *trans. not sought*.

The plaintiff asserts that the testimony was properly excluded because it was contrary to Whitaker v. Kruse, 495 N.E.2d 223 (Ind. Ct. App. 1986), *trans. not sought*, which she contends prevents a defendant tortfeasor from seeking to reduce his liability by questioning the judgment of a plaintiff's health care providers. Applying Whitaker, the Court of Appeals affirmed the trial court's decision to exclude portions of the defendant's medical witness's testimony, concluding that the defendant "should not be able to challenge the particular course of treatment chosen by the plaintiff's medical care providers to treat the injuries resulting from the defendant's negligence." Sibbing, 901 N.E.2d at 1162.

The defendant argues that if Whitaker is correct and applicable here, "then a defendant will never be able to refute a plaintiff's claim that medical bills were reasonable and necessary." Appellant's Br. at 26.

On appeal, the defendant contends that the trial court's striking of portions of Dr. Kern's deposition testimony erroneously prevented the defendant from challenging "the reasonableness and the necessity of some of Cave's treatment." Appellant's Br. at 22. In other places, he identifies his claim by referring only to whether the challenged treatment was "medically necessary." *Id.* at 13, Appellant's Reply Br. at 14. The defendant does not challenge the *reasonableness* as to any of the *dollar amounts* incurred by the plaintiff for her medical care, but rather he asserts that he should have been permitted to present evidence to challenge the *necessity* of certain *treatment*, specifically the nerve conduction study and "passive care" treatment provided more than four weeks after the collision.

For over a century, some Indiana appellate opinions have recited that to recover damages

7

for medical expenses, such expenses must be "reasonable and necessary." *See, e.g.* Hickey v. Shoemaker, 132 Ind.App. 136, 143, 167 N.E.2d 487, 490 (1960), *trans. not sought*; City of Bedford v. Woody, 23 Ind.App. 401, 403, 55 N.E. 499, 500 (1899), *trans. not sought*. When this phrase has appeared, the issue usually addressed is the reasonableness of medical expenses, not the necessity of the medical treatment.

For example, in Stanley v. Walker, 906 N.E.2d 852, 855 (Ind. 2009), this Court recently observed that an injured plaintiff "is entitled to recover damages for medical expenses that were both necessary and reasonable." *Id.* at 855. But our decision in Stanley concerned only the reasonableness of the amount of claimed medical expenses, not the necessity of the medical treatment. The principal issue was the admissibility of a defendant's evidence of discounted amounts accepted by the plaintiff's medical providers, and we conclude: "The focus is on the reasonable value, not the actual charge. This is especially true given the current state of health care pricing." *Id.* at 856–57. Similarly, in Cook, 796 N.E.2d 271, we recite the "reasonable and necessary" qualification, *id.* at 277, but focus only on the "reasonable" component, holding that Indiana Evidence Rule 413 (which permits statements of charges for health care expenses to be admissible and to "constitute prima facie evidence that the charges are reasonable") applies only to expenses already incurred, not to the estimated cost of future medical treatment. *Id.* at 278. Another example of our referring to the "reasonable and necessary" rule without explication or application is Smith v. Syd's, Inc., 598 N.E.2d 1065 (Ind. 1992), in which we recite the rule, "it must be proven at trial that these expenses were both reasonable and necessary," *id.* at 1066, but find the issue waived. *Id.* at 1066–67.

As authority for the "reasonable and necessary" requirement, Stanley rests upon Cook, Cook rests upon Smith, and Smith cites to Hickey and Bedford as its authority. While both Hickey and Bedford use the phrase "reasonable and necessary," neither case addresses the "necessary" component. In Hickey, the issue addressed was whether the defendant could be liable for the wife's medical bills, then the debt of her husband. The issue in Bedford was the need to prove "reasonable value" of unpaid medical services.[4]

---

[4] Similar references noting that a personal injury plaintiff must show both reasonableness and necessity, but without elaboration as to the meaning and application of the necessity component, are also

In a few Indiana appellate cases, the outcomes appear to have involved application of the "necessary" component, although without detailed discussion. *See, e.g.* Childress, 779 N.E.2d 546 (applying "damages directly attributable to the wrong" to satisfy "reasonable costs of necessary medical treatment," affirmed trial court order that jury verdict was inadequate); Cooper v. High, 262 Ind. 405, 407, 317 N.E.2d 177, 179 (1974) (finding that a rule disallowing recovery of a plaintiff's expenses for a physician incurred in litigation preparation was "in accord with the Indiana policy of allowing the necessary and reasonable expenses for medical attention, medicine and nursing"); Pennsylvania Co. v. Marion, 104 Ind. 239, 244, 3 N.E. 874, 877 (1885) (voluntary nursing services provided without charge "were necessary to ameliorate the condition and suffering of the plaintiff" and evidence of attending physician as to the value of these services was admissible).

While the foregoing opinions provide little clarification as to the proper application of "necessary," it is apparent that the shorthand phrase "reasonable and necessary" embodies two

---

found, for example, in Burge, 808 N.E.2d at 132 (reciting that the plaintiff must prove that "expenses were both reasonable and necessary" but finding satisfactory proof thereof from admission of medical statements under Evidence Rule 413 and by the defendant's concessions at trial); Russell v. Neumann-Steadman, 759 N.E.2d 234, 237 (Ind. Ct. App. 2001), *trans. not sought* (noting that an injured plaintiff may recover "the reasonable cost of necessary medical expenses" and holding insufficient a personal injury verdict for the plaintiff on liability but awarding zero damages); Chemco Transport v. Conn., 506 N.E.2d 1111, 1115 (Ind. Ct. App. 1987), *summarily affirmed on this issue*, 527 N.E.2d 179, 180 (Ind. 1988) (holding that the defendant's failure to challenge the admissibility of the medical bills precluded the need to address whether they "alone were sufficient to prove [the plaintiff's] reasonable and necessary medical expenses"); Dee v. Becker, 636 N.E.2d 176, 178 (Ind. Ct. App. 1994), *trans. not sought* (affirming verdict for an amount less than the plaintiff's actual medical expenses, recognizing the "jury's responsibility to evaluate reasonableness"); Childress v. Buckler, 779 N.E.2d 546, 551 (Ind. Ct. App. 2002), *trans. not sought* (holding verdict inadequate in light of uncontroverted evidence of the "reasonable costs of necessary medical expenses"); Acme-Evans Co. v. Schnepf, 105 Ind.App 475, 481–82, 15 N.E.2d 742, 744 (1938), *trans. not sought* (holding that plaintiff's recovery for "reasonable value of the necessary services of a nurse, the same as the services of a physician or surgeon," includes the gratuitous nursing services given by mother of injured minor son in action by father); Brosnan v. Sweetser, 127 Ind. 1, 9, 26 N.E. 555, 557 (1891) (stating that liability extends to "the reasonable value of the necessary services" of nursing care provided by the plaintiff's brother and sister, "the same as the services of a physician or surgeon"); Summers v. Tarney, 123 Ind. 560, 564, 24 N.E. 678, 679 (1890) (noting a presumption that the amount actually expended "for surgical treatment [of an injured horse] was a reasonable and proper payment"); Herrick v. Sayler, 160 F. Supp. 25 (N.D. Ind. 1958) (addressing whether value of government medical care supplied to a member of the armed services is a proper element of damages, observed that Indiana law allows an injured plaintiff to recover any reasonable expense necessarily incurred).

9

aspects.  First, the claimed amount of medical expenses must be reasonable.  Second, the nature and extent of the claimed medical treatment must be necessary.

In the present case, the plaintiff asserts that evidence proffered by the defendant to challenge the medical necessity of some of the plaintiff's treatment was correctly excluded pursuant to Whitaker.

In Whitaker, the Court of Appeals reversed a verdict for the defendants because an instruction improperly permitted the defendants to contest the propriety of the plaintiff's doctor's diagnosis and treatment.  It concluded:

> We hold that an injured party may recover for injuries caused by the original tort-feasor's negligent conduct and for any aggravation of those injuries caused by a physician's improper diagnosis and unnecessary treatment or proper diagnosis and negligent treatment. In order to recover under this rule, the plaintiff need only show he exercised reasonable care in choosing the physician.

Whitaker, 495 N.E.2d at 226.  The court found that the defendants' allegation was merely that their expert witnesses "would have elected to continue conservative treatments rather than perform surgery."  *Id.* at 227.[5]

The rationale expressed in Whitaker was that "the tort-feasor created the necessity for medical care in the first instance.  So long as the individual seeking medical care makes a reasonable choice of physicians, he is entitled to recover for all damages resulting from any aggravation of his original injury caused by a physician's misdiagnosis or mistreatment."  *Id*. at 225–26, *citing* Suelzer v. Carpenter, 183 Ind. 23, 32, 107 N.E. 467, 470–71 (1915).  The court also noted the Restatement (Second) of Torts § 457 (1965):

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for

---

[5] Strikingly similar to the present case, Whitaker arose from a rear-end collision resulting in neck and back injuries.  The defendants there argued that some of the plaintiff's medical treatment was unreasonable or unnecessary.  The court explained:

> The evidence was undisputed that Whitaker had suffered some injury to her neck and back as a result of the accident, although the extent of that injury was disputed.  The only issue raised by [defendants] through their expert witnesses was whether Whitaker's physicians had chosen the correct course of action in treating her neck and back injuries.  [The defendants] expert witnesses did not dispute that Whitaker had suffered back and neck injuries from the automobile accident or that Whitaker had selected qualified physicians to treat her injuries.

Whitaker, 495 N.E.2d at 227.

10

any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

Whitaker explained: "Liability is imposed because it is reasonably foreseeable that medical care providers are human and capable of making mistakes."  495 N.E.2d at 226.

Recognizing the general rule in Indiana that a plaintiff's recovery may be reduced if he fails to obey his physician's instructions and thereby exacerbates or aggravates his injury, the Whitaker court sternly rejected the proposition that an injured party could not recover for injuries caused by misdiagnosis or performance of an arguably unnecessary procedure, declaring that such a rule would place the injured party "in the unenviable position of second-guessing his physicians in order to determine whether the doctor properly diagnosed the injury and chose the correct treatment.  This court will not place innocent parties who have been injured by another's negligence in such a position." *Id.*

But we do not read Whitaker to allow an injured plaintiff to recover for medical treatment wholly unrelated to a defendant's wrongful conduct.  Whitaker does not eliminate the causation element.  It specifically states: "We hold that an injured party may recover for injuries *caused* by the original tort-feasor's negligent conduct . . . ." *Id.* (emphasis added).  And although holding that a plaintiff may recover for damages from a physician's misdiagnosis or mistreatment, the language of Whitaker is that such damages must be "*resulting* from any aggravation of his original injury caused by a physician's misdiagnosis or mistreatment." *Id.* (emphasis added).

"Under standard negligence doctrine, in order for a defendant to be liable for a plaintiff's injury, the defendant's act or omission must be deemed to be a proximate cause of that injury." City of Gary v. Smith & Wesson Corp., 801 N.E.2d 1222, 1243 (Ind. 2003).  "'Proximate cause' has two components: causation-in-fact and scope of liability." Kovach v. Caligor Midwest, 913 N.E.2d 193, 197 (Ind. 2009).  "The scope of liability doctrine asks whether the injury was a natural and probable consequence of the defendant's conduct, which in the light of the circumstances should have been foreseen or anticipated." *Id.* at 198.  The analysis in Whitaker is helpful in understanding the contours of this foreseeability aspect when a defendant seeks to challenge the nature and extent of medical treatment selected and provided by a plaintiff's medical care profes-

11

sionals.  Even if their medical judgment is unsound or erroneous, such human frailties are reasonably foreseeable and do not allow a defendant to escape liability for wrongful conduct.  *Id.* at 226.

This formulation does not have the result, as the defendant here warns, that "a defendant will never be able to refute a plaintiff's claim that medical bills were reasonable and necessary." Appellant's Br. at 26.  As to reasonableness, the Whitaker rule does not affect the evaluation of whether the amount claimed for a medical expense is reasonable.  The rule does, however, guide application of the "scope of liability" aspect of the proximate cause element.  While Whitaker restricts a defendant's evidence as to the "scope of liability" component of proximate cause, it does not preclude challenge to the "causation-in-fact" component.  A future defendant may thus present evidence to counter a plaintiff's claim that but for the defendant's alleged negligence, the disputed medical treatment would not have occurred.  *See* Kovach, 913 N.E.2d at 198; City of Gary, 801 N.E.2d at 1244.  Thus, for example, a plaintiff may not recover damages for dental care received following a collision in which harm to the plaintiff's teeth was not implicated.  Likewise, a defendant may properly challenge whether a plaintiff's medical treatment was not at all necessitated by the alleged tortious conduct but by a non-aggravated, pre-existing condition.

In summary, we hold that the phrase "reasonable and necessary," as a qualification for the damages recoverable by an injured party, means (1) that the amount of medical expense claimed must be reasonable, (2) that the nature and extent of the treatment claimed must be necessary in the sense that it proximately resulted from the wrongful conduct of another, and (3) the rule in Whitaker is a correct application of the "scope of liability" component of proximate cause.[6]

In the present case, the defendant challenges the exclusion of evidence from his medical expert challenging the medical necessity of Dr. Saquib's nerve conduction studies at Priority 1

---

[6] Our holding today focuses on the extent to which a defendant may challenge the appropriateness of medical treatment provided to a personal injury plaintiff.  It is not intended, however, to alter existing Indiana law regarding a plaintiff's general burden of proof and does not imply disapproval of existing pattern jury instructions related thereto.  For example, we are not suggesting any necessary revision in Indiana Pattern Jury Instruction No. 11.25, which describes the medical expense element of damages as follows: "The reasonable expense of necessary medical care, treatment, and services [and the reasonable expense of future medical care, treatment, and services]."

Medical and the "passive care" treatment provided more than four weeks after the collision, first from Priority 1 Medical and later under Dr. Sheppard at Castleton Chiropractic. The defendant does not assert that such treatment lacks causation in fact, that is, that plaintiff failed to establish that, but for the collision, the challenged treatment would not have occurred. Instead, the defendant disputes the medical judgment of the plaintiff's medical providers in choosing to administer the questioned studies and treatment. This he may not do. The trial court was correct to exclude the proffered evidence, and the Court of Appeals properly applied <u>Whitaker</u> to affirm the trial court's decision.

### Conclusion

We affirm the judgment of the trial court.

Sullivan, Boehm, and Rucker, JJ., concur. Shepard, C.J., concurs in result with separate opinion.

**SHEPARD, Chief Justice, concurring in result.**

Given the regularity with which this Court expresses its faith in the judgment of juries, I am surprised that my colleagues hold today that on a crucial issue submitted for jury decision one side may provide evidence but the other side may not.

The Court's explanation about the scope of a tortfeasor's potential responsibility for the costs necessitated by his actions seems straightforward and correct. And, the notion that a claimant has the burden to provide proof that medical specials reflect reasonable and necessary treatment expenses is hornbook law.

What is not hornbook law is the rule announced about how this issue may be litigated before the jury. The claimant may satisfy the burden of proof simply by tendering medical bills in accordance with Evidence Rule 413. The responding party is barred from challenging whether these bills do in fact reflect reasonable and necessary treatment, the very thing the jury will be called upon to decide.

This is not the sort of jury trial Justice Boehm described for a unanimous Court:

> In order to recover an award of damages for medical expenses, the party seeking to recover these damages must prove that the expenses were both reasonable and necessary. Smith v. Syd's Inc, 598 N.E.2d 1065, 1066 (Ind. 1992). This was traditionally proven by expert testimony. The purpose of Rule 413 is to provide a simpler method of proving amount of medical expenses when there is no substantial issue that they are reasonable and were caused by the tort. If there is a dispute, of course the party opposing them may offer evidence to the contrary, including expert opinion.

Cook v. Whitsell-Sherman, 796 N.E.2d 271, 277 (Ind. 2003).

Most of the time, when medical treatment is provided by mainstream practitioners, there will be little tussle over whether the care was reasonable and necessary and the practical effect of prohibiting a party from tendering probative evidence to the jury will not likely lead to an unjust verdict. Because I am not persuaded that the prohibition worked an injustice in this instance, I

join in affirming the outcome.  But the breadth of today's ruling will lead future judges and juries to work injustices at the very moment when judgment is most needed to hold to account providers at the edge of reasonably necessary treatment, or beyond it.  Today's "Sibbing rule" insulates sharp practices from scrutiny, which is why I decline to join in.