**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

FILED
Aug 29 2014, 9:35 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| QUENTON D. DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1401-CR-28 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1308-FD-921

**August 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Quenton D. Davis appeals his conviction for domestic battery. He argues that the testimony of the State's expert witness on domestic violence is inadmissible and that without that testimony the evidence is insufficient to support his conviction. Concluding that the independent evidence of guilt is so substantial that there is no substantial likelihood that the expert's testimony contributed to the guilty verdict, we do not need to address Davis's sufficiency of the evidence argument and affirm.

**Facts and Procedural History**

In the early morning hours of August 10, 2013, Shana Walker was at home with her four children, three of whom were Davis's. Walker was in bed and spoke to Davis on the phone. Davis then came to Walker's house. He wanted the keys to her car, but she did not want to give him the keys because he had been drinking. She told him to leave and that she did not want to be bothered. She got upset, went outside to her car, and drove up and down the street a couple times. Davis was mad and threw a skateboard through a window of her house. She told him to leave, and they argued. She did not remember exactly what happened after that, although she did remember that she called 911.

At 4:35 a.m., Walker called 911. She told the operator that her children's father had just hit her. She said that he came to her house drunk and put his hands on her, bit her in the face, and tried to choke her. The operator asked her whether she needed an ambulance, and she replied that she did not know but that she might need help for her jaw. She said that she was walking away from her house and that Davis had gone inside. She told the operator that

she was wearing a blue nightgown. She said that Davis had left the house and was after her. She screamed for help to a passing car. She jumped into the car because Davis was chasing her. She started crying. The driver of the car dropped Walker off at a corner. The operator told her that police were on their way and to call back if necessary.

At 4:45 a.m., Walker called 911 again. She said that she was scared, and she was crying. She told the operator that Davis was drunk and that he hit her and chased her down the street, so she jumped in a car with someone. At that moment, she was out of the car waiting for Davis's mother to come. She explained that her children were inside her house and that when Davis bit her and tried to choke her they were outside the house. She told the operator that she was hiding behind a bush. When she saw the police car, she came out from behind the bush and waved it down.

The police and EMTs arrived. They observed that Walker was crying. She was "very anxious," "visibly upset," and hyperventilating. Tr. at 180, 183, 197. She complained of jaw and neck pain. She said that she and Davis were arguing and that he grabbed her, knocked her to the ground, hit her jaw, put his arm around her neck, and bit her on the cheek and the side of her mouth. The police noted injuries to the right side of her jaw and the left side of her face, swelling to her lip, and a bite mark on her right cheek. The police took photographs of Walker's injuries as she pointed them out. State's Ex. 5-8.

The police drove Walker back to her house. She climbed in through the broken window and let the police in. Police found Davis in a bedroom with the children. They arrested him and escorted him to the police car but he refused to put his feet inside the

3

vehicle. The police had to call for another vehicle to transport Davis to the jail. Davis kicked the police and bit an officer's finger. He threatened to spit on the officers, hunt them down and hurt them, rape an officer, and urinate in an officer's mouth and in the officer's daughter's mouth.

The State charged Davis with class D felony domestic battery, class D felony resisting law enforcement, two counts of class D felony intimidation, and class A misdemeanor resisting law enforcement. The State also alleged that Davis was a habitual offender.

A three-day jury trial was held. On direct examination, Walker testified that she could not remember exactly what happened after she and Davis argued. On cross, she testified that she made up the battery because she was angry at Davis for cheating on her, and that she did not think that he bit her because she did not have a mark on her face. The State's witnesses also included one of the 911 operators, one of the EMTs, seven police officers, Davis's mother, and a forensic odontologist. In addition, Pat Smallwood, a domestic violence expert, testified for the State about the reasons why some victims of domestic abuse will recant their claims of abuse. Davis stipulated to her credentials as an expert in domestic violence but objected to her testimony on the grounds that it was irrelevant and was not based on reliable scientific principles. The State's exhibits included recordings of Walker's 911 phone calls and the photographs of Walker's injuries. The jury found Davis guilty as charged.

**Discussion and Decision**

Davis appeals his conviction for class D felony domestic battery. He challenges the admissibility of Smallwood's testimony on various grounds and argues that without

4

Smallwood's testimony the evidence is insufficient to support his domestic battery conviction.

We observe that "errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996); Ind. Trial Rule 61. "To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the jury." *Sibbing v. Cave*, 922 N.E.2d 594, 598 (Ind. 2010). "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000). "To determine that the error did not contribute to the verdict, we determine whether the error was unimportant in relation to everything else the jury considered on the issue in question." *Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003), *trans. denied*.

To convict Davis of domestic battery, the State had to prove beyond a reasonable doubt that Davis knowingly or intentionally touched a person with whom he has a child in common in a rude, insolent, or angry manner resulting in bodily injury to that person. Ind. Code § 35-42-2-1.3. The State's evidence included the 911 recordings. Walker's 911 calls were made minutes after Davis allegedly knocked her down, bit her, and put his arm around her neck. During the 911 calls, Walker is noticeably crying and frightened. Walker's statements to police when they arrived are consistent with the statements she made to the 911

operators. Walker had visible injuries which were strikingly consistent with the aforementioned evidence. The injuries were photographed and admitted. In addition, the forensic odontologist testified that the injury on Walker's cheek as shown in the police photograph was a bite mark. Tr. at 356. Accordingly, the independent evidence of guilt consisting of the 911 recordings, Walker's statements to police, the photographs of her injuries, and the testimony of the forensic odontologist is so substantial that there is no substantial likelihood that Smallwood's testimony contributed to the verdict. Given this conclusion, we need not address Davis's argument as to the sufficiency of the evidence. *See Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) ("We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."). Accordingly, we affirm Davis's conviction for domestic battery.

Affirmed.

RILEY, J., and MATHIAS, J., concur.