**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 12 2017, 10:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY PRO SE

Mike Harmon, Jr.
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mike Harmon, Jr., <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | April 12, 2017 <br><br> Court of Appeals Case No. <br> 45A03-1605-PC-1048 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> The Honorable Kathleen A. Sullivan, Magistrate <br><br> Trial Court Cause No. <br> 45G01-1305-PC-6 |

**Najam, Judge.**

# Statement of the Case

Mike Harmon, Jr. appeals the post-conviction court's denial of his petition for post-conviction relief. Harmon raises the following three issues for our review:

1.    Whether the post-conviction court erred when it rejected Harmon's contention that the State had improperly withheld potentially exculpatory evidence from him during his trial.

2.    Whether the post-conviction court erred when it concluded that Harmon did not receive ineffective assistance from trial counsel.

3.    Whether Harmon's convictions denied him his constitutional rights to due process and equal protection of the laws.

We affirm.

# Facts and Procedural History

The facts underlying Harmon's convictions were stated by our court in his direct appeal:

> During the evening of January 4, 2011, Dominique Smith ("Dominique") was in his Gary apartment located across the street from the New Jerusalem Church of God and Christ ("the Church"). Dominique's grandfather, Pastor Lawrence Smith ("Pastor Smith"), had served as pastor of the Church for nearly thirty years and continued to preach at the Church on a regular basis. While watching television, Dominique heard a loud noise that sounded like a knock at his door. Dominique went down the back stairs and looked down the alley in an attempt to

discover the source of the noise. Dominique saw a man, who was subsequently identified as Harmon, attempting to break one of the Church's windows with either a rock or a brick. Dominique saw Harmon enter the Church through the window after he was able to successfully break the window. After watching Harmon enter the church, Dominique notified Pastor Smith of the break-in.

Dominique walked around to the front of the church to wait for Pastor Smith to arrive. As Pastor Smith approached, Dominique went back around the side of the Church. Dominique saw Harmon's legs hanging out of the window. Pastor Smith also saw Harmon's legs hanging out of the window. Dominique ordered Harmon to "Stop, don't move. Don't go nowhere." Tr. p. 14. Harmon attempted to flee but was cornered by Pastor Smith's vehicle and detained by Dominique until police arrived.

Shortly after Dominique detained Harmon, Gary Police Officers Francis Peckler and David Finley arrived at the scene. Officer Finley secured Harmon while Officer Peckler, Pastor Smith's wife Theodora, and Dominique entered the Church. Upon entering the Church, Theodora noticed broken glass near the window through which Harmon had gained access to the Church. Theodora also saw that a piece of cardboard had been placed in the broken window. She further noticed that some of the furnishings had been rearranged and a stone statute depicting angels and a waterfall had been moved from its normal location and placed near the broken window. Dominique noticed that a keyboard and a public address system which were normally stored near the pulpit had been moved to near the broken window. In addition to pieces of broken glass laying near and a piece of cardboard placed in the broken window, Officer Peckler noticed what appeared to be a broken vase right below the broken window. Pastor Smith testified that while he could not remember specifically whether certain items were out of place

when he entered the Church a few days after the break-in, he did remember that a gold flower pot had been moved.

Officers Finley and Peckler found two flashlights and two hand files in Harmon's jacket pocket at the time of his arrest. Both Officer Peckler and lead detective Officer Brian Farrow testified that in their experience as police officers, hand files and flashlights are items that are typically used during the course of a burglary when an individual is attempting to break into a structure and steal something.

On January 6, 2011, the State charged Harmon with Class C felony burglary and Class B misdemeanor criminal mischief. On February 4, 2011, the State amended the charging information to include an allegation that Harmon was a habitual offender. The State again amended the charging information on July 26, 2011, adding a charge of Class B felony burglary. On November 10, 2011, Harmon waived his right to a jury trial.

Following a bench trial, the trial court, acting as the fact-finder, found Harmon guilty of Class B felony burglary and Class B misdemeanor criminal mischief. Harmon stipulated that he was a habitual offender. On January 5, 2012, the trial court imposed an aggregate twenty-year term of incarceration. Harmon subsequently filed a motion to correct error, which was denied by the trial court on February 27, 2012. . . .

*Harmon v. State*, No. 45A02-1203-CR-256, 2012 WL 5193218 at *1-2 (Ind. Ct. App. Oct. 22, 2012) (footnote omitted), *trans. denied* ("*Harmon I*").

[3] In *Harmon I*, Harmon argued that the State had failed to present sufficient evidence to show that he had committed burglary, as a Class B felony. In particular, Harmon asserted that the State's evidence established only "that he

entered and exited the Church through a broken window" and "not that he moved any property in a way that would envince [sic] an intent to commit theft." *Id.* at *2. We held, "[i]n light of witness testimony that certain furnishings had been rearranged and multiple items were moved from their normal locations and placed near the broken window[,] combined with Harmon's possession of tools . . . typically used during the course of a burglary," that the State presented sufficient evidence to support Harmon's conviction. *Id.* at *4.

[4] In May of 2013, Harmon filed his petition for post-conviction relief, which he later amended. In his amended petition, Harmon alleged that he had received ineffective assistance from his trial counsel, Samuel Vazanellis, based on various theories. At an ensuing evidentiary hearing, Harmon first argued that Vazanellis had failed to demand certain allegedly exculpatory photographs taken by the State at the Church during the course of its investigation. In response to that argument, Vazanellis testified:

> [T]he pictures would have shown the objects next to the window. I don't see what . . . the difference is between people testifying to what was below the window and what the pictures would have shown. Everyone testified they don't know whether or not they moved it or you moved it, so I don't see how that's an issue.

P-CR Tr. at 35.

Harmon further alleged that Vazanellis had erroneously advised Harmon to waive his right to a jury trial. In response, Vazanellis testified that, in light of the fact that Harm had "admitted" that he had broken into the Church:

> I explained to you that this was a question of law, not a question of fact, that you had broken into the church[] but you didn't intend to steal anything. And that was a question of law, and it was my opinion that a bench trial would be better than a jury hearing that you broke into a church and weren't planning on stealing anything.

> I thought that the fact that you broke into a church and the jury hearing that would prejudice you, and the jury would just assume that you had broken in to steal something. Where a [j]udge can be fair and impartial and he can distinguish between those things. If there was no evidence that anything was moved and there was no evidence of an intent to steal, he would only be able to find you guilty of trespass. I thought it would be better to have a bench trial.

> And then I advised you of that and you chose. You made the ultimate decision of having a bench trial.

*Id.* at 45-47. And, in response to Harmon's claim that Vazanellis had failed to introduce favorable letters written by the victims, Vazanellis responded that such evidence was unnecessary as Pastor Smith and his wife had "testified in court for you on your behalf" and specifically stated that they believed Harmon "didn't move anything and . . . didn't commit burglary." *Id.* at 45.

Following the evidentiary hearing, the post-conviction court denied Harmon's petition. In doing so, the court found and concluded as follows:

14.    . . . [Harmon] was presumably aware of the alleged existence of the [alleged exculpatory] photographs at trial, yet their lack [of having been admitted] was not raised on direct appeal and so is waived here.

15.    In addition, [Harmon] fails to demonstrate how any photographs of clear glass and a vase might be exculpatory in any way, as he does not dispute that Officer Peckler's testimony in describing those items was accurate.

* * *

22.    [Harmon] has failed to show prejudice in regard to any of the issues raised in his petition.  As to [Harmon's] allegations that [Vazanellis] failed to investigate, Mr. Vazanellis testified as to his theory of defense and it was a reasonable, albeit ultimately unsuccessful, one. . . .

23.    [Harmon] also alleges violations of due process and equal protection of the laws; however, the gist of [Harmon's] argument appears to be that there was insufficient evidence to convict him. On this point, he is barred by *res judicata* as the issue was addressed by the Court of Appeals [in *Harmon I*] . . . .

Appellant's App. Vol. II at 13-14.  This appeal ensued.

# Discussion and Decision

Harmon appeals the post-conviction court's denial of his petition for post-conviction relief.  Our standard of review is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)

(citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

[8] On appeal, Harmon raises three issues for our review: (1) whether the State failed to disclose potentially exculpatory photographs;[1] (2) whether Harmon received ineffective assistance from Vazanellis; and (3) whether his conviction for Class B felony burglary violated his rights to due process and equal protection of the laws. We address each argument in turn.

---

[1] In the post-conviction court, Harmon styled this alleged error as a claim of ineffective assistance of counsel. While he does not frame the issue in the same way on appeal, the State does not take issue with Harmon's repackaging of the substance of the claim he had presented to the post-conviction court. *Cf. Bunch v. State*, 964 N.E.2d 274, 297-304 (Ind. Ct. App. 2012) (considering the post-conviction petitioner's claim that the State had withheld potentially exculpatory evidence), *trans. denied*.

### Issue One: Photographs

[9] We first consider Harmon's argument that the State failed to disclose potentially exculpatory photographs, namely, certain photographs that, according to Harmon, would have shown that a vase placed near the broken window "belong[ed] there." Appellant's Br. at 11. The post-conviction court rejected Harmon's argument on two grounds. First, the court found that this issue was available, but not argued, by Harmon on direct appeal. Second, the court found that, Harmon's waiver notwithstanding, his argument lacked merit.

[10] We agree that Harmon's argument lacks merit. Assuming for the sake of argument that this issue was even properly before the post-conviction court, Vazanellis testified that the allegedly exculpatory photographs were merely cumulative to the testimony of the witnesses. *See* P-CR Tr. at 35. Error cannot be predicated on evidence that is merely cumulative. *See, e.g.*, *Sibbing v. Cave*, 922 N.E.2d 594, 598 (Ind. 2010). Accordingly, Harmon cannot demonstrate that the post-conviction court's judgment on this issue is contrary to law.

### Issue Two: Ineffective Assistance of Counsel Claim

[11] Harmon next argues that he received ineffective assistance from his trial counsel:

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of

reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Campbell*, 19 N.E.3d at 274. Harmon argues that Vazanellis rendered constitutionally deficient assistance because, according to Harmon, Vazanellis did not properly advise Harmon regarding Harmon's decision to waive his right to a jury trial; Vazanellis failed to submit to the court during trial letters written by the victims that were favorable to Harmon; and Vazanellis did not timely file a motion to correct error in the trial court following the bench trial.

[12] We first consider Harmon's argument that Vazanellis did not properly advise him regarding his right to a jury trial. At the evidentiary hearing before the post-conviction court, Vazanellis testified that he advised Harmon to waive his right to a jury trial because Harmon's best defense was to argue that he had only committed trespass at the Church and not burglary. Vazanellis advised Harmon that this argument was best made to the court, and not the jury, because Vazanellis did not think a jury would be likely to believe that Harmon broke into the Church without an intent to commit a felony therein. The post-conviction court relied on Vazanellis' testimony and concluded that he had acted in a reasonable manner. We cannot say that the post-conviction court's judgment, which is supported by the record, is contrary to law.

[13] We next consider Harmon's argument that Vazanellis failed to submit favorable evidence, namely, the letters from the victims, to the trial court. At the evidentiary hearing before the post-conviction court, Vazanellis testified that he did not submit the written letters because the victims testified to the court and the substance of their testimony was the same as the substance of the letters. Harmon presents no cogent argument on appeal to demonstrate that Vazanellis' testimony is incorrect. Accordingly, we cannot say that the post-conviction court's judgment on this issue is contrary to law.

[14] Finally, Harmon argues that Vazanellis rendered ineffective assistance because he failed to file a timely motion to correct error. But whether timely filed or not, the substance of the motion to correct error was based on a claim of insufficient evidence to support Harmon's conviction for Class B felony burglary. As explained in *Harmon I*, that argument failed. Accordingly, Harmon cannot demonstrate that the post-conviction court's judgment on this issue is contrary to law.

### Issue Three:  Due Process and Equal Protection

[15] Harmon's final issue on appeal is whether he "has been denied due process and . . . equal protection" based on Issue One, Issue Two, and/or "the [b]ench trial" generally. Appellant's Br. at 17. For the reasons explained above, we reject Harmon's arguments under Issue One and Issue Two. And, as his conviction for Class B felony burglary was supported by sufficient evidence, as explained in *Harmon I*, we reject his third argument that his bench trial violated his constitutional rights.

[16]     In sum, we affirm the post-conviction court's denial of Harmon's petition for post-conviction relief.

[17]     Affirmed.

Riley, J., and Bradford, J., concur.