## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 07 2018, 8:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sandy L. Bryant
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Larry A. Yeager
State Farm Litigation Counsel
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenitta K. Chandler, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Rhonda Bowser, <br> *Appellee-Defendant.* | May 7, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1706-CT-1346 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable John F. Hanley, Judge <br><br> Trial Court Cause No. <br> 49D11-1412-CT-39762 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Rhonda Bowser was ordered to pay $17,630.31 in damages to Kenitta Chandler for injuries arising out of a motor vehicle accident. The trial court denied Chandler's motion to correct error requesting additur. Chandler appeals, raising the sole issue of whether the trial court erred as a matter of law in denying her motion. Bowser cross-appeals and raises one issue for review: whether Chandler waived her appeal for failing to provide this court with the entire transcript of the trial as required by Indiana Appellate Rule 9(F)(5). Concluding there was no error, we affirm the judgment of the trial court.

# Facts and Procedural History

[2] On December 9, 2012, Bowser and Chandler were involved in a motor vehicle accident in which Bowser struck the back of Chandler's car. Chandler visited the emergency room the day after the accident, and again on January 17, 2013. On her first visit to the emergency room, Chandler complained of low back pain and left side neck pain but had a full range of motion in her neck, hips, knees, and ankles, and both her upper and lower extremities exhibited good strength. Her second visit was prompted by a spasm in her neck causing pain and discomfort.

[3] Chandler was then seen on three different occasions by Dr. Robert Cater, an internist. At her first visit on January 28, 2013, Dr. Cater found her to have

significant neck spasm, a limited range of motion in her neck, pain in both shoulders and elbows, pain in her left knee, dizziness, and a palpable spasm in the muscles of her lower back, all of which Chandler said related to her accident. Dr. Cater did not review Chandler's medical records from before the accident, but she reported no pre-existing history of injuries or ongoing pain, and Dr. Cater testified that the injuries he treated Chandler for "were directly related to her motor vehicle accident . . . ." Transcript, Volume II at 12. "If the trauma had not occurred, she would not have had symptoms, in my opinion." *Id.* at 15. Dr. Cater recommended Chandler continue taking the pain medication prescribed in the emergency room and begin physical therapy. Chandler attended physical therapy from February 5, 2013 through April 9, 2013. Dr. Cater noted "the subsequent physical therapy notes . . . showed improvement to definitely require physical therapy to maintain her normal function." *Id.* at 20.

[4] When Chandler returned to Dr. Cater in March, she still had daily pain in her shoulders and lower back but had an improved range of motion in her neck. And when she returned a month after that, her neck and knee pain had resolved, but she still had reduced mobility in her lower back and persistent pain in her back and shoulder. Dr. Cater intended for Chandler to continue with physical therapy, but a referral was not sent until August. Once the referral was made, Chandler began physical therapy again on August 29, 2013, continuing through November 2013. Chandler did not contact Dr. Cater's office between April and August regarding the lost referral.

[5]  In February 2014, Chandler began treating with Dr. Jonathan Shook, an orthopedic surgeon. He assessed Chandler's most outstanding issue as persistent shoulder pain stemming from the accident and recommended additional physical therapy. Chandler began physical therapy again in June 2014, attending regularly through September 2014.

[6]  Chandler filed a complaint for damages against Bowser on December 5, 2014, alleging Bowser was negligent in operating her motor vehicle and seeking damages for her personal injuries. Bowser admitted liability but challenged the nature, cause, and extent of Chandler's injuries and damages. At a jury trial in April 2017, Chandler introduced into evidence a medical bill summary indicating total medical expenses of $24,857.22, incurred between December 10, 2012, and September 30, 2014. These expenses included her two emergency room visits, treatment with both Dr. Cater and Dr. Shook, medications, and physical therapy from February 2013 to April 2013, from August 2013 to November 2013, and from June 2014 to September 2014.

[7]  Although Dr. Cater testified that Chandler's medical treatments all stemmed from the accident, he conceded that back pain, neck pain, and spasms can be caused by things other than motor vehicle accidents, such as sleeping wrong, for instance. He also noted that the notes from Chandler's first emergency room visit indicate she had low back and neck pain but a full range of motion and good strength in her upper and lower extremities. Dr. Cater further testified that there was evidence Chandler had degenerative changes between the fifth and sixth vertebrae in her neck. Finally, Dr. Cater acknowledged that his

opinions about whether the accident caused Chandler's injuries and pain were based primarily upon the three visits she made to him, but the subsequent visits with Dr. Shook and physical therapists "were further indication that she continued to have pain and symptoms." *Id.* at 63.

[8] Ultimately, Dr. Cater testified that the medical bill summary reflected "the involvement of multiple medical professionals, all of whom felt that the patient had significant pain and disability[,]" and therefore the treatment was necessary based on her injuries. *Id.* at 27. Based on his experience and review of Chandler's medical records, Dr. Cater concluded the charges in the medical bill summary "are reasonable charges considering the course of her illness and the length." *Id.*

[9] Apparently,[1] Chandler argued for damages in the amount of $125,000 to account for her medical bills and pain and suffering. Bowser posited that Chandler could be entitled to as little as $0 damages, given she failed to seek medical care on the date of the accident, to as much as $11,331.49, to account for her medical care through her first round of physical therapy. The jury awarded Chandler damages in the amount of $17,630.31. Chandler subsequently filed a motion to correct error, requesting additur pursuant to Indiana Trial Rule 59(J)(5) to award her a judgment in the amount of her

---

[1] As will be discussed below, Chandler requested that only Dr. Cater's testimony be transcribed. Although Bowser requested additional parts of the transcript be prepared, neither party requested the entire trial be transcribed, and the record therefore includes only Dr. Cater's testimony and Bowser's closing argument.

medical bills.  The court denied Chandler's motion to correct error.  Chandler now appeals the denial of this motion to correct error.

# Discussion and Decision

## I.  Waiver

We begin by addressing Bowser's waiver argument.  Bowser argues that Chandler waived her argument regarding the sufficiency of the verdict by not requesting and providing the entire transcript of the two-day jury trial.  Indiana Appellate Rule 9(F)(5) states that a party's Notice of Appeal shall include

> [a] designation of all portions of the Transcript necessary to present fairly and decide the issues on appeal.  If the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal *shall request a Transcript of all the evidence*.

(Emphasis added.)  Although a failure to include a transcript is "not fatal to the appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence."  *Lifeline Youth & Family Servs., Inc., v. Installed Bldg. Products, Inc.*, 996 N.E.2d 808, 814 (Ind. Ct. App. 2013) (quoting *In re Walker*, 665 N.E.2d 586, 588 (Ind. 1996)).

Chandler has chosen to rest her appeal on the testimony of Dr. Cater alone, requesting only the "[t]rial testimony of Dr. Robert Cater and Stipulated Medical Bill Exhibit of jury trial conducted on April 18 & 19, 2017" be

prepared. Notice of Appeal at 2. In her reply brief, she recommits to that decision, stating she need not provide a transcript of the entire trial as she has provided the "*only* evidence as to the amounts of medical specials" which is all that is needed to "fairly present and decide the issue of additur." Appellant's Reply Brief at 5-6. Chandler's argument on appeal, however, is that the jury's verdict is "contrary to the evidence." Pursuant to Appellate Rule 9(F)(5), she should have requested a transcript of all the evidence. The failure to comply with Appellate Rule 9(F)(5) could therefore be found to constitute a waiver. Waiver notwithstanding, we are nonetheless inclined to address the merits of Chandler's argument. However, she is bound by the consequences of that choice. In other words, we can only decide the issue on the record presented to us. "It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the . . . judgment." *Marion-Adams Sch. Corp. v. Boone*, 840 N.E.2d 462, 468-69 (Ind. Ct. App. 2006).

## II. Motion to Correct Error

### A. Standard of Review

On appeal, we review a trial court's rulings on motions to correct error for abuse of discretion. *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind. 2003). We will reverse only where "the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

Pursuant to Indiana Trial Rule 59(J)(5), if the trial court determines on a motion to correct error that prejudicial or harmful error has occurred, it "shall take such action as will cure the error," including, "[i]n the case of excessive or inadequate damages, enter[ing] final judgment on the evidence for the amount of the proper damages, grant[ing] a new trial, or grant[ing] a new trial subject to additur or remittitur." "Trial courts must afford juries great latitude in making damage award determinations." *Childress v. Buckler*, 779 N.E.2d 546, 550 (Ind. Ct. App. 2002). Only the evidence favorable to the award is considered and the court "must not reverse a damage award so long as the damages fall within the scope of the evidence." *Palmer v. Comprehensive Neurologic Services, P.C.*, 864 N.E.2d 1093, 1103 (Ind. Ct. App. 2007), *trans. denied*. A verdict will be reversed only if the amount of damages awarded indicates "the jury was motivated by prejudice, passion, partiality, corruption, or consideration of some improper element." *Id.*

## B. Award of Damages

Chandler argues that her medical bill summary and Dr. Cater's testimony established her undisputed medical bills are $24,877.22 and that her damage award should have been at least that amount. To recover damages for medical expenses, the expenses must be both reasonable and necessary. *Sibbing v. Cave*, 922 N.E.2d 594, 600 (Ind. 2010). Reasonable and necessary "means (1) that the amount of medical expense claimed must be reasonable, [and] (2) that the nature and extent of the treatment claimed must be necessary in the sense that it proximately resulted from the wrongful conduct of another . . . ." *Id.* at 604.

[15] Chandler is correct that Indiana Evidence Rule 413 provides that statements of charges for health care expenses "are prima facie evidence that the charges are *reasonable*." (Emphasis added.) Despite this, Chandler still has the burden of proving that "the treatment claimed [was] necessary in the sense that it proximately resulted from the wrongful conduct . . . ." *Sibbing*, 922 N.E.2d at 604.[2] Although Dr. Cater did testify that he found all of the charges in the medical bills summary to be reasonable and necessary, "[d]amages are particularly a jury determination." *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001). "[T]he jury is free to either accept or reject the opinion of the expert witness; the finder of fact may supplant its own conclusion for that of the expert." *Walker v. Cuppett*, 808 N.E.2d 85, 95 (Ind. Ct. App. 2004) (noting that this rule means the defendant in a personal injury case can challenge the opinion of the plaintiff's expert regarding causation: "Doctors and other expert witnesses are not oracles whose opinions, once stated, cannot be questioned or refuted . . . .").

[16] Considering the breaks in Chandler's physical therapy, the testimony of Dr. Cater that Chandler had degenerative changes in her neck, his testimony that spasms can be caused by factors other than a motor vehicle accident, and the

---

[2] The medical bill summary was admitted into evidence by stipulation of the parties. Chandler contends Bowser's "unqualified stipulation" of the summary into evidence means Bowser could not then, nor can she now, challenge the reasonableness and necessity of the medical bills summarized therein. Appellant's Reply Brief at 8. Although the medical bill summary provides some evidence that the charges therein were reasonable, Bowser rigorously contested whether the charges were necessary during her cross-examination of Dr. Cater. Contrary to Chandler's assertion, Bowser did not waive her right to challenge the necessity of the charges by her stipulation that the summary represented medical bills Chandler had incurred.

fact that the medical bill summary shows bills for over a year after Dr. Cater last treated Chandler, it was within the scope of the evidence adduced from Dr. Cater for the jury to reject the necessity of some of the stipulated medical costs. Additionally, despite Chandler's assertion that the jury must have considered some improper element, there is no indication in the record provided by Chandler that "the jury was motivated by prejudice, passion, partiality, corruption, or consideration of some improper element." *Palmer*, 864 N.E.2d at 1103. Finally, the trial court heard *all* of the evidence from this two-day trial and determined that no prejudicial or harmful error was committed in the award of damages. Given our standard of review and the state of the record on appeal, Chandler has not shown that the trial court abused its discretion in denying her motion to correct error.

# Conclusion

[17] Concluding that the trial court did not abuse its discretion in denying Chandler's motion to correct error, we affirm.

[18] Affirmed.

Crone, J., and Bradford, J., concur.