

IN THE

# Court of Appeals of Indiana



FILED

Sep 19 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Rick Lawson
and MGM Automotive Repair, Inc.,

*Appellants-Defendants,*

v.

Kasia M. McClendon-Campbell,
as guardian of Cecil McClendon, Jr.,

*Appellee-Plaintiff.*

---

September 19, 2025

Court of Appeals Case No.
25A-CT-182

Appeal from the
Lake Superior Court

The Honorable
Calvin D. Hawkins, Judge

Trial Court Cause No.
45D02-2105-CT-486

**Najam, Senior Judge.**

## Statement of the Case

Rick Lawson rear-ended Cecil McClendon, Jr. at a stoplight. McClendon sustained a concussion upon impact, and he developed symptoms of dementia soon after the accident. His quality of life rapidly declined as his symptoms worsened, and his family placed him in a nursing home less than a year after the accident.

McClendon, through his guardian and daughter Kasia M. McClendon-Campbell,[1] sued Lawson and Lawson's employer, MGM Automotive Repair, Inc., for negligence. Lawson and MGM conceded they were liable for any harm to McClendon that resulted from the accident. But they claimed that McClendon's cognitive decline was caused by Alzheimer's dementia, not the collision. The jury determined Lawson and MGM owed McClendon $3.7 million. Lawson and MGM filed two post-trial motions: (1) a motion for

---

[1] In the Notice of Appeal, Lawson and MGM stated her last name was McClendon. But we use the name McClendon-Campbell provided when she testified at trial.

judgment notwithstanding the verdict; and (2) a motion for remittitur. The trial court denied both motions after a hearing.

[3] Lawson and MGM appeal, arguing the trial court erred in denying their post-judgment motions. Concluding that the trial court did not err, we affirm.

## Issues

[4] Lawson and MGM raise three issues, which we consolidate and restate as:

> I. Whether the trial court erred in denying their motion for judgment notwithstanding the verdict.
>
> II. Whether the trial court abused its discretion in denying their motion for remittitur.

## Facts and Procedural History

[5] In August 2019, Cecil McClendon, Jr. ("McClendon") was seventy-seven years old. He was a retired high school science teacher and guidance counselor. In addition, McClendon had earned a master's degree and was a retired Air Force Captain. He managed his family's finances, golfed or walked every day, and took turns with his wife, Berneda McClendon ("Berneda"), in preparing dinner. McClendon had close relationships with his children and grandchildren. He had high blood pressure and high cholesterol, but he displayed no symptoms of cognitive decline. To the contrary, four months before August 2019, McClendon's treating nurse practitioner, Tonya Harvey, administered "an extensive cognitive exam" to McClendon. Tr. Vol. 2, p. 8. He passed.

[6] On August 21, 2019, McClendon was driving his Toyota Corolla in Merrillville, Indiana. He was struck from behind by Rick Lawson, who was driving a Ford Crown Victoria. Lawson was test-driving the vehicle as part of his duties for his employer, MGM Automotive Repair, Inc. ("MGM").

[7] After the accident, McClendon told Lawson that he was dizzy. McClendon also told a police officer that he felt dizzy and had head pain. He drove home from the accident scene, but Berneda insisted that he go to the emergency room because he did not seem like himself. McClendon told hospital staff that his head had struck the headrest. A doctor diagnosed him with neck strain and a concussion. A concussion is a form of traumatic brain injury. An expert later explained that McClendon's head had initially dipped forward after the impact and was then struck by the headrest as the seat "[caught] up to him." Tr. Vol. 3, p. 137.

[8] Lawson later stated he had been going seven to ten miles per hour when he struck McClendon. McClendon's vehicle was damaged. The mechanic who repaired McClendon's Corolla later said that the metal impact bar in the rear of the car was "destroyed" and had to be replaced. Id. at 13.

[9] McClendon's daughter, Kasia M. McClendon-Campbell ("McClendon-Campbell"), and Berneda both noticed changes in McClendon's behavior after the accident. Tr. Vol. 1, p. 151 (McClendon-Campbell described the changes as "immediate"); Tr. Vol. 3, p. 64 (Berneda said he began a "quick" decline). He would go to the store with a shopping list, but rather than buying what was on

the list, he would return home with cookies and candy. That was the first sign of his "[c]onfusion[,]" but it got worse. Tr. Vol. 1, p. 152. By September 2019, Berneda, who in the past had always preferred that McClendon drive when they went out, began driving him to some of his medical appointments because he could not remember directions. In addition, within a few weeks of the collision, she had to hang a yellow wreath on their front door because the houses in their neighborhood all looked alike, and he could no longer tell them apart.

[10] McClendon's personality also changed. He swore at Berneda, which he had not done in the past. On one occasion, McClendon demanded that she give him the car keys, and she complied because she was afraid. He kept driving against his family's wishes. McClendon also stopped cooking meals and lost interest in foods that he had previously enjoyed.

[11] By October and November 2019, McClendon had trouble changing the channels on his television and using his cell phone, and he blamed the devices. When the cable went out in McClendon's house in November or December 2019, he used scissors to cut the power cord to the television.

[12] Also in November or December, McClendon began wearing the same clothes for several days in a row. When Berneda asked him to change, he put his dirty clothes in the trash. In addition, with McClendon-Campbell's help, Berneda took over managing the family finances, over McClendon's strong objections.

She learned he had been throwing bills in the trash rather than organizing and paying them.

[13] During this period, McClendon bought a snow blower, but he thought it was broken because he could not operate it or read the manual. He intended to take the snow blower back to the store, which was fifteen minutes from his house by car. Instead, McClendon ended up in northwest Ohio, four hours away, where he was taken into police custody. His family members had to go get him.

[14] McClendon stopped using toilet paper, preferring to use paper towels instead. In January or February 2020, McClendon stopped flushing the toilet. During this period of time, Berneda encountered McClendon brandishing an unloaded handgun in the house.

[15] On February 18, 2020, a police officer encountered McClendon driving the wrong way on an Indiana state highway. McClendon said he was going to Crown Point, but he was driving in the wrong direction. When an officer explained McClendon's mistake, he turned his car around and began driving the wrong way a second time. The officer stopped McClendon and removed him from his car. McClendon appeared to be confused, became hostile, and said he was being harassed. Another officer contacted McClendon-Campbell, who advised them to take him to a hospital.

[16] After that incident, McClendon's family put him in a nursing home. In the nursing home, treatment providers determined McClendon's statements about his life and health were untrustworthy due to his cognitive impairments. He

later had to be moved to a different nursing home because he became verbally and physically abusive to other residents and to employees. Berneda and McClendon-Campbell stopped taking McClendon to family gatherings because they believed he posed a threat to others' safety.

[17] McClendon visited several health care providers during the post-accident period. Five days after the collision, he saw Nurse Practitioner Harvey. McClendon reported pain, dizziness, balance issues, and loss of coordination. She noted that he appeared to be confused and could not understand complex concepts, which was a significant change from his mental state during prior appointments. Nurse Practitioner Harvey saw McClendon again in September and October of 2019, and he was even more confused, getting progressively worse. Berneda told her that McClendon continued to drive, but he often got lost.

[18] McClendon also saw a neurologist, Dr. Aisha Shareef, in August 2019. He reported headaches and dizziness. During subsequent appointments, McClendon continued to report dizziness. On October 16, he told Dr. Shareef's nurse practitioner that he was having "problems with cognition." Tr. Vol. 3, p. 40. Over the next four months, Dr. Shareef noted that McClendon's mental capabilities declined by a "concerning" degree. *Id.* at 37. She saw McClendon on February 18, when he was hospitalized after the incident where he twice drove the wrong way on a highway. Dr. Shareef expressed concern that he may have developed dementia.

[19] McClendon-Campbell became McClendon's guardian. In May 2022, she sued Lawson and MGM on behalf of McClendon in connection with the auto accident. McClendon-Campbell alleged that Lawson was negligent. She also alleged that MGM was liable for Lawson's negligence under the doctrine of respondeat superior and had negligently hired and trained Lawson.

[20] The trial court presided over a four-day jury trial. The parties stipulated to the following: (1) Lawson's car struck McClendon's car; (2) Lawson was acting within the scope of his employment for MGM; (3) MGM and Lawson were liable for the collision; (4) McClendon was not at fault; and (5) "Plaintiff, his Guardian, or his Family have incurred medical bills to date of $426,017.94." Appellants' App. Vol. 2, p. 38. There was no dispute that McClendon experienced a concussion from the accident.

[21] Nurse Practitioner Harvey and Dr. Shareef testified as discussed above.[2] In addition, McClendon presented testimony by Dr. Polly Westcott, a neuropsychologist. Dr. Westcott performed a forensic review of McClendon's medical records and the police accident report. She also interviewed his family members.

[22] Dr. Westcott explained that McClendon developed rapid-onset dementia after the accident, and "it is more probable than not" that the dementia was caused by the traumatic brain injury. Tr. Ex. Vol. 11, p. 99. She stated that a

---

[2] Dr. Shareef testified via a prerecorded deposition.

traumatic brain injury can lead to dementia even when the patient does not lose consciousness as a result of the underlying accident, or when the brain injury appears to be mild in nature. Dr. Westcott ruled out Alzheimer's dementia as a diagnosis because one of the key components of that form of dementia is "a slow decline," which was not apparent before the accident. Tr. Vol. 2, p. 69. She also ruled out other potential causes, including that: (1) McClendon had played football as a young man; and (2) he had experienced an unreported stroke sometime before the accident. Dr. Westcott added that McClendon's age rendered him more susceptible to a traumatic brain injury resulting in dementia.

[23] By contrast, Lawson and MGMs' experts stated that the concussion did not cause McClendon's cognitive decline because he made a full recovery. They instead attributed his cognitive decline to the stroke or to an ongoing degenerative process of atrophy in his brain cells, which caused him to develop Alzheimer's dementia. They pointed out that a doctor had diagnosed McClendon with Alzheimer's dementia in 2020.

[24] McClendon-Campbell asked the jury to calculate damages of between eight million dollars and eleven million dollars to compensate McClendon. Lawson and MGM suggested that "$40,000 to $60,000" was more appropriate. Tr. Vol. 3, p. 192. The jury determined Lawson and MGM owed McClendon $3.7 million, and the trial court entered judgment on the jury's verdict.

Lawson and MGM filed a motion for judgment notwithstanding the verdict, asking the trial court to vacate the judgment and either: (1) enter judgment in their favor; or (2) order a new trial. They also filed a motion for remittitur, claiming the damages award was unsupported by the evidence. The trial court denied both motions after a hearing. This appeal followed.

## Discussion and Decision

### I. Motion for Judgment Notwithstanding the Verdict

Lawson and MGM claim the trial court erred in refusing to set aside its entry of judgment, arguing there is insufficient evidence to support several elements of McClendon-Campbell's negligence claim.[3] They filed their motion under Indiana Trial Rules 50(A) and 59(J)(7). We review motions under each of those rules under separate standards of review.

Rule 50(A) provides, in relevant part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

---

[3] McClendon-Campbell argues Lawson and MGM have procedurally defaulted appellate review of this claim because they conceded liability early in the case and were thus barred from later contesting causation. Having reviewed the parties' post-trial pleadings and the transcript of the trial and the hearing on post-trial motions, we reject McClendon-Campbell's claim of procedural default and turn to the merits.

[28]     A party may move for judgment notwithstanding the verdict at several different points during a trial and subsequent stages, including (as happened in the current case) in a post-judgment motion to correct error. Ind. Tr. R. 50(A). We review a trial court's decision on a Rule 50(A) motion de novo. *Cosme v. Clark*, 232 N.E.3d 1141, 1152 (Ind. 2024). A trial court should not grant relief under this motion unless "'there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference' for the movant."[4] *Id.* at 1150 (quoting *Whitaker v. Borntrager*, 122 N.E.2d 734, 734-35 (Ind. 1954)). We may not reweigh the evidence. *Id.* at 1152.

[29]     Indiana Trial Rule 59 governs motions to correct error, and subsection (J)(7) of that rule provides, in relevant part:

> In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence[.]

---

[4] In *Cosme*, the movant filed a Rule 50(A) motion after the plaintiff rested. In the current case, Lawson and MGM filed their motion after the entry of judgment. We conclude that de novo review remains correct when a party files a Rule 50(A) motion post-judgment. *See Dughaish ex rel Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind. Ct. App. 2000) (applying de novo standard of review to a Rule 50(A) motion filed after the jury returned its verdict), *trans. denied*.

[30]     When a party requests relief under Rule 59(J)(7), the trial court acts as a "thirteenth juror" and may weigh evidence and judge witness credibility. *Dughaish*, 729 N.E.2d at 169. "We will reverse only for an abuse of discretion." *Id.* at 167. "An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom." *Id.* A trial court does not commit reversible error if it denies a new trial where the evidence is conflicting. *Id.* When reviewing a trial court's decision on a Trial Rule 59(J)(7) motion, "[i]t is improper for Indiana appellate courts to invade the province of the jury in weighing [conflicting] evidence." *Id.* at 170.

[31]     The elements of negligence are as follows: (1) the existence of a duty on the part of Lawson to conform his conduct to a standard of care arising from his relationship with McClendon; (2) Lawson's failure to conform his conduct to the requisite standard of care; and (3) an injury to McClendon proximately caused by Lawson's breach. *Mayfield v. The Levy Co.*, 833 N.E.2d 501, 505 (Ind. Ct. App. 2005).

[32]     Lawson and MGM conceded at trial that Lawson breached a duty to McClendon and caused him to experience some damages, but they claim the accident did not proximately cause McClendon's cognitive decline. In Indiana, the proximate cause element involves two inquiries: "whether the injury would not have occurred but for the defendant's negligence; and (2) whether the plaintiff's injury was 'reasonably foreseeable as the natural and probable consequence of the act or omission.'" *Singh v. Lyday*, 889 N.E.2d 342, 357 (Ind.

Ct. App. 2008) (quoting *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1244 (Ind. 2003)), *trans. denied*. Lawson and MGM challenge both aspects of proximate cause, and we address each in turn.

## A. Reasonable Foreseeability

The reasonable foreseeability element of proximate cause, also known as the "scope of liability doctrine," asks whether the plaintiff's injury was a natural and probable consequence of the defendant's conduct, which in light of the circumstances, should have been foreseen or anticipated. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197-98 (Ind. 2009). A defendant cannot be held liable if the ultimate injury was not reasonably foreseeable as a consequence of the defendant's act or omission. *Id.*

Relying heavily on *Kovach*, Lawson and MGM claim the "ultimate injury" here—McClendon's rapid-onset dementia—must have been specifically foreseeable to Lawson at the time of the accident. Reply Br. p. 4. But that reliance is misplaced. Although the *Kovach* court discusses both elements of proximate causation, its decision on the merits of the parties' claims was based on but-for causation, not foreseeability. 913 N.E.2d at 199 (victim's death from overdose would not have occurred but for nurse's administration of excessive amount of medication to victim; lack of measurement marks on medicine cup was irrelevant). Instead, it has long been established that the concept of reasonable foreseeability does not mean a tortfeasor must have anticipated a specific and exact outcome. "The determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is

based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary course of men." *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989), *trans. denied*. "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen [sic] the extent of harm or the manner in which it occurred does not preclude liability." *Id.*

[35] The following authorities recognize the principles discussed in *Harper*:

> Courts assume a radical distinction between the nature of a harm and its extent. The foreseeability or risk rule holds the defendant subject to liability if he could reasonably foresee the nature of the harm done, *even if the total amount of harm turned out to be quite unforeseeably large*.

Dan B. Dobbs, Paul T. Hayden, Ellen M. Bublick, The Law of Torts Vol I, p. 711 (2d ed. 2011) (emphases in original omitted, emphasis added). Similarly:

> To render a person liable for negligence, it is sufficient that such person should have foreseen that the negligence would probably result in injury of some kind to some person, and *the person need not have foreseen the particular consequences or injury that resulted*. It is the tendency of the act involved to cause some injury to the person who is actually injured thereby, or to someone else who occupies a position which, in reference to the act, is analogous to the situation of the injured person, under the circumstances known to the actor, that is to be discovered.

57A Am. Jur. 2d Negligence § 123 (2025) (citations omitted, emphasis added).

[36] In the current case, Lawson struck McClendon's vehicle from behind, causing his head to whip forward and then strike the headrest. There is no dispute that McClendon developed a concussion from the impact. And viewing the facts in the light most favorable to the judgment, McClendon's concussion developed into rapid-onset dementia. Lawson may not have specifically anticipated the extent of the harm here, that is, that he would strike a seventy-seven-year-old person who, because of his age, was more susceptible to a traumatic brain injury leading to rapid-onset dementia. But Lawson's breach of his duty to McClendon to drive safely was a substantial factor that led McClendon to develop dementia. Put another way, McClendon's dementia, although a more severe injury than Lawson may have anticipated, was a natural and probable consequence of the auto accident. *See Sandberg Trucking, Inc. v. Johnson*, 76 N.E.3d 178, 185 (Ind. Ct. App. 2017) (plaintiff provided sufficient evidence for jury to determine trucker proximately caused accident; it was reasonably foreseeable that truck pulling over without activating emergency lights would lead to car rear-ending parked truck, resulting in extreme injuries to passenger in car), *overruled in part on other grounds by Progressive Se. Ins. Co. v. Brown*, 182 N.E.3d 197, 203 (Ind. 2022); *cf. Turner v. Davis*, 699 N.E.2d 1217, 1220 (Ind. Ct. App. 1998) (overturning jury verdict in auto accident case where plaintiff claimed to have developed sleeping disorder after accident; plaintiff failed to submit medical testimony to prove causation), *trans. denied*.

[37] Lawson and MGM contend that McClendon's dementia was not a foreseeable consequence because the only evidence to support the link between his

concussion and the development of his rapid-onset dementia was Dr. Westcott's expert testimony. They further contend that, here, the test for foreseeability is whether prior to the accident an "ordinary prudent driver," a layperson, could have apprehended and realized that a rear-end collision causing a traumatic brain injury could lead to rapid-onset dementia. Appellants' Br. p. 18. They argue, in effect, that McClendon-Campbell should have presented lay testimony instead of or in addition to Dr. Westcott's testimony.

[38] Lawson and MGM not only failed to present this argument to the trial court, but they made the opposite argument in the hearing on their post-judgment motions, stating, "In cases such as this, medical testimony—competent medical testimony is required to connect an accident or a tort to a medical condition when it's beyond the understanding of an ordinary layperson, and this is certainly one of those cases." Tr. Vol. 3, p. 209. At trial, Lawson and MGM accepted the jury instructions on foreseeability and causation, which omitted any reference to lay testimony. They did not tender different instructions and did not preserve an alleged instruction error for appeal.[5] Instead, they attempt to redefine the foreseeability element post hoc.[6] This is a new argument that

---

[5] Final Instruction 14 states, "An injury is 'foreseeable' when a person should realize that his act or failure to act might cause harm." Appellants' App. Vol 2, p. 40. And Final Instruction 17 states: "A person's conduct is legally responsible for causing an injury if . . . the injury would not have occurred without the conduct, and . . . the injury was a natural, probable, and foreseeable result of the conduct. This is called a 'responsible cause.'" *Id.* at 43.

[6] The two cases Lawson and MGM cite on the issue of lay testimony and causation do not support their argument. *Murray v. Indianapolis Public Schools*, 128 N.E.3d 450 (Ind. 2019) is about contributory negligence,

was not made or preserved at trial when jury instructions were tendered nor in their post-judgment motions and is waived. *In re N.G.*, 51 N.E.3d 1167, 1173 (Ind. 2016) (appellant waived claim by failing to argue it to trial court). A party may not raise one argument in the trial court and a different argument on appeal. *In re Paternity of Baby W.*, 774 N.E.2d 570, 577 (Ind. Ct. App. 2002) (claim waived for appellate review; party raised one argument in trial court and different argument on appeal), *trans. denied*.

[39] Lawson and MGM also cite *Renner v. Shepard-Bazant*, 172 N.E.3d 1208, 1212 (Ind. 2021), in which the trial court denied the plaintiff's motion to correct error on damages arising from an automobile collision. Among other issues, our Supreme Court was asked to determine "whether the trial court properly concluded [the defendant's] negligence was not the sole cause of all of [the plaintiff's] injuries." *Id*. The Court, viewing the evidence in the light most favorable to the trial court's decision, affirmed the trial court, noting that the plaintiff had suffered two other concussions in the year after the auto accident. The Supreme Court also determined that the evidence showed the defendant's negligent driving was not the probable cause of the plaintiff's poor performance in college, noting that her high school grades were not exceptional, and in college she may not have studied diligently.

---

makes no reference to proximate cause, and is otherwise inapposite. Likewise, *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992), a medical malpractice case in which the Supreme Court considered whether expert testimony was needed to demonstrate that a defendant physician had breached the standard of care, makes no reference to proximate cause or foreseeability.

In this case, we, like the *Renner* court, must view the facts in the light most favorable to the trial court's denial of Lawson and MGM's motion for judgment notwithstanding the verdict. Applying that standard of review here reveals there is ample factual support for the trial court's decision. The auto accident caused McClendon's concussion, which, according to Dr. Westcott led him to develop rapid-onset dementia.

Lawson and MGM claim that McClendon was actually suffering from Alzheimer's dementia, pointing to radiography on the day of the accident that showed some cortical atrophy. They also cite McClendon's February 2020 diagnosis of Alzheimer's dementia. But the jury and the trial court (sitting as the thirteenth juror) were not obligated to accept Lawson and MGM's perspective on the evidence, and we may not reweigh the evidence regardless of whether we review the trial court's decision de novo or for abuse of discretion. The trial court did not err in denying Lawson and McClendon's motion on grounds of reasonable foreseeability.

## B. "But-For" Causation

To establish "but-for" causation, also known as "causation in fact," "the plaintiff must show that but for the defendant's allegedly tortious act or omission, the injury at issue would not have occurred." *Kovach*, 913 N.E.2d at 197-98. A plaintiff "must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in

fact of [the plaintiff's] injury." *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994), *trans. denied*.

[43]    Lawson and MGM argue that "[w]eighing the evidence eliminates but-for causation." Appellants' Br. p. 25.  They also argue, "the weight of the evidence is against finding that Lawson's negligent driving caused [McClendon's] permanent dementia." *Id.* at 28.

[44]    Their argument misapprehends our standard of appellate review, as discussed above.  On de novo review of a Trial Rule 50(A) motion, neither we nor the trial court weigh evidence or assess witness credibility.  *Cosme*, 232 N.E.3d at 1152.  Under Trial Rule 59(J)(7), the trial judge may weigh the evidence because the judge "hears the case along with the jury [and] observes witnesses for their credibility, intelligence, and wisdom[.]" *Precision Screen Machs., Inc. v. Hixson*, 711 N.E.2d 68, 70 (Ind. Ct. App. 1999).  But we, as the reviewing court, must consider the parties' arguments based on a cold record, without observing witness testimony directly.  As a result, we do not second-guess the jury or the trial court by reweighing the evidence.  *Chafin v. Grayson*, 761 N.E.2d 474, 476 (Ind. Ct. App. 2002) , *trans. denied*.

[45]    Viewing the record in the light most favorable to the judgment, there is sufficient evidence that McClendon would not have developed dementia but for the auto accident with Lawson.  There is no dispute that Lawson struck McClendon from behind, and Lawson and MGM concede McClendon suffered a concussion from the accident.  Dr. Westcott told the jury that McClendon

developed a rapidly-developing form of dementia, not Alzheimer's dementia, and "it is more probable than not" that the dementia was caused by the concussion, which in turn was caused by Lawson's negligent driving. Tr. Ex. Vol. 11, p. 99.

[46] Lawson and MGM direct us to testimony from their expert witnesses and McClendon's medical care providers, none of whom linked his cognitive decline to the concussion. Their experts instead stated that he developed Alzheimer's dementia after the accident, based on factors that occurred before the accident. Lawson and MGM also point out alleged flaws in Dr. Westcott's analysis. But the jurors heard all of this evidence, and they chose to accept Dr. Westcott's testimony. There was sufficient evidence to establish "but for" causation that supports the trial court's refusal to set aside the jury's verdict. On appeal, Lawson and MGM's arguments amount to a request to reweigh the evidence, which we cannot do under either applicable standard of review. The trial court did not abuse its discretion in denying Lawson and MGM's motion for judgment notwithstanding the verdict.

## II. Motion for Remittitur

[47] Lawson and MGM argue the jury's verdict is beyond the scope of the evidence presented at trial and must have been based on "undue speculation."[7]

---

[7] In their motion for remittitur, they also argued that the jury's damage award was based on passion or prejudice. They do not make that argument on appeal.

Appellants' Br. p. 22. They filed their motion for remittitur under Indiana Trial Rule 59. That rule provides, in relevant part, that a party may file a motion to correct error to argue that "a jury verdict is excessive or inadequate." Ind. Tr. Rule 59(A)(2). Trial Rule 59 was intended "to govern requests that the trial judge exercise the common law powers of additur and remittitur." *Tipmont Rural Elec. Membership Corp. v. Fischer*, 716 N.E.2d 357, 358 (Ind. 1999).

[48] "We afford a jury's damage awards great deference on appeal." *Sims v. Pappas*, 73 N.E.3d 700, 709 (Ind. 2017). "'A damage award will not be reversed if it falls within the bounds of the evidence.'" *Id.* (quoting *Raess v. Doescher*, 883 N.E.2d 790, 795 (Ind. 2008) (internal quotation omitted)). Accordingly, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *Santelli v. Rahmatullah*, 993 N.E.2d 167, 173 (Ind. 2013). We have defined an abuse of discretion above. "We 'look only to the evidence and inferences therefrom which support the jury's verdict,' and will affirm it 'if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting[.]'" *Raess*, 883 N.E.2d at 795 (quoting *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001)) (internal quotation omitted).

[49] "Damages in negligence actions are awarded to compensate the injured party fairly and adequately for the loss sustained." *Menard, Inc. v. Terew*, 210 N.E.3d 833, 840 (Ind. Ct. App. 2023), *trans. denied*. "Reasonable compensation refers to an amount that would reasonably compensate the plaintiff for bodily injury and for pain and suffering and also takes into account past, present, and future expenses reasonably necessary to the plaintiff's treatment." *Id*. "Awards for

pain, suffering, fright, humiliation and mental anguish are particularly within the province of the jury because they involve the weighing of evidence and credibility of witnesses." *Hixson*, 711 N.E.2d at 71.

[50] Here, the parties stipulated that "Plaintiff, his Guardian, or his Family have incurred medical bills to date of $426,017.94." Appellants' App. Vol. 2, p 38. Lawson and MGM argue that this number is not reliable because the jury's damage award is intended to compensate McClendon for his losses, not to repay other family members for amounts they may have contributed. But McClendon-Campbell testified she taught Berneda how to pay the bills after McClendon could no longer manage the process, and Berneda testified about outstanding bills for which she and McClendon were liable. There is no evidence that McClendon-Campbell paid any bills out of her own pocket rather than acting as guardian to ensure bills are being paid. Nor is there any evidence that any other family members besides Berneda paid any of McClendon's bills.

[51] Next, Berneda testified she was paying approximately $8,000 per month for McClendon's nursing home care. The jury was instructed that McClendon could be expected to live for another 7.1 years, or 85.2 months. $8,000 per month for 85.2 months adds up to $681,600 in future nursing home costs for McClendon.

[52] Subtracting past medical bills and future nursing home costs from the $3.7 million damages award leaves $2,592,382.06. That amount reasonably represents McClendon's pain and suffering because it falls within the bounds of

the evidence presented at trial. Before the accident, he was an educated, accomplished person who valued his independence. McClendon enjoyed his retirement by spending time with family, exercising, and cooking. He managed the family's finances and was the primary driver in the family. In the months after the accident, McClendon became angry and aggressive toward his family, and he lost interest in food, exercising, and his favorite television shows. He no longer knew how to operate the television or his phone, and he could no longer remember directions, causing him great frustration.

[53] McClendon ultimately lost all of his independence and will be confined to a nursing home for the rest of his life, up to seven years or more, mentally incapacitated and unable to understand what has happened to him. McClendon does not recognize Berneda, and neither Berneda nor McClendon-Campbell will take him out of the nursing home to see other family members because he may become violent. This evidence amply supports a large award for his pain and suffering. *Cf. Menard, Inc.*, 210 N.E.3d at 840-41 (reversing damages award of $3.8 million in slip-and-fall case; plaintiff's injuries healed almost completely and her companion admitted she could perform same tasks she had performed before fall). The trial court did not abuse its discretion in denying Lawson and MGM's motion for remittitur of the $3.7 million damages award.

## Conclusion

[54] For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Vaidik, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANTS

Tiernan B. Kane
SouthBank Legal
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Brian N. Custy
Andrew G. Brown
Custy Law Firm
Valparaiso, Indiana